THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
LOUIS ORTIZ, Defendant-Appellant.

First District (2nd Division)   No. 1—85—3365*

Opinion filed September 5, 1989.

*This case was assigned to the second division on April 11, 1989.

Randolph N. Stone, Public Defender, of Chicago (Robert Glick, Assistant Public Defender, of counsel), for appellant.

Cecil A. Partee, State's Attorney, of Chicago (Inge Fryklund, James Fitzgerald, and LaCoulton Walls, Assistant State's Attorneys, of counsel), for the People.

JUSTICE HARTMAN delivered the opinion of the court:

Defendant Louis Ortiz was charged by information with aggravated battery, armed violence, and attempted murder, arising out of the shooting of Enrique Cruz. Following a bench trial, defendant was acquitted of attempted murder, but found guilty on three counts of aggravated battery and two counts of armed violence, and sentenced to 15 years in custody of the Illinois Department of Corrections. He appeals from that finding and raises as issues whether: the circuit court erred in failing to suppress an in-court identification of him as fruit of an unlawful arrest and the evidence was sufficient to prove him guilty beyond a reasonable doubt.

On October 18, 1984, at approximately 12:30 a.m., Enrique Cruz (Cruz) was shot near a tavern located on North Damen Avenue in Chicago. Defendant subsequently was arrested and charged in connection with the offense. Prior to trial, defendant moved to quash his arrest and suppress certain evidence, which included photographic and lineup identifications of defendant made by Cruz. At the suppression hearing, Detective John Howe testified that on the evening of November 27, 1987, he was investigating the shooting of Cruz when he arrested defendant. Three weeks earlier, Cruz had informed Howe that shortly before being shot, he was harassed by members of the Warlords and Latin Kings street gangs. According to Howe, Cruz had described the gunman as a white male Hispanic, having dark hair, approximately 5 feet 6 inches tall with a slight build, and about 20 years old. Howe did not recall if Cruz mentioned whether the assailant had a mustache or beard.

Howe, knowing defendant was a member of the Latin Kings who fit the general description provided by Cruz, stopped defendant on the street, searched him, and recovered a .25 caliber handgun. Howe then arrested and photographed defendant. Cruz selected defendant's picture from a photographic display as the person who shot him. He also identified defendant in a lineup held the next day.

The court found defendant did not adequately fit Cruz' general description of the gunman as recounted by Howe; citing a lack of articulable facts to warrant the initial stop of defendant, it concluded he was arrested without probable cause. The physical evidence seized pursuant to the arrest, and the photographic and lineup identifications made by Cruz, were suppressed as a consequence.

The court heard defendant's motion to suppress Cruz' in-court identification simultaneously with the trial. Cruz, the State's first witness, testified that at 12:15 a.m. on October 18, 1984, he went into the subject tavern to see his friend "Marcos." After having a beer, he

stepped outside where he was confronted by 10 to 13 individuals. Four men from this group walked up to Cruz and asked him if he "was a Latin Disciple or if [he] was Folks." Cruz denied any gang affiliation. Marcos then walked outside and advised the group that Cruz was a family man and did not belong to a gang. Cruz and Marcos returned inside the tavern.

Cruz decided to leave two or three minutes later and was accompanied by Marcos to the front of the tavern. Alone, Cruz proceeded to his van, parked directly across the street. As he put his key in the vehicle door, he heard a shot and turned around. He saw a man, who he later identified as defendant, coming toward him, shooting continuously. Cruz tried to crawl under his van to avoid the shots, but nevertheless was struck four or five times. Defendant jumped over Cruz and ran down a gangway near an empty lot on the east side of Damen.

Cruz further testified that when he first saw defendant, he was about 20 feet away, but quickly closed to within four or five feet. Cruz looked straight at defendant, whose face was uncovered, for two or three minutes. He described the lighting conditions as "very bright" from "bright street lights" positioned directly above the space where his van was parked. He also remembered additional lighting coming from the street corner, as well as from a light immediately above the tavern's doorway.

After the shooting, Cruz was taken to a hospital, where he remained for a month and a half. He averred that while still in the hospital, he gave police the following description of his assailant: 5 feet 6 inches or 5 feet 7 inches height; 145 to 160 pounds; a small "fro"; a goatee, with the nubs of a mustache; flat nose; olive color skin; and wearing a dark brown jacket.

On cross-examination, Cruz denied telling police: he was first approached by gang members while still inside the tavern; he "passed out" after the shooting; or Marcos walked him all the way to the street corner before he continued on alone to his van. He acknowledged he was shot in the back, but claimed it occurred when he attempted to crawl underneath his van. He also maintained that a streetlight was located across the street from the tavern and was centered directly over his van.

Upon completion of Cruz' testimony, the defense moved to have his in-court identification of defendant suppressed, based upon discrepancies in the description Cruz claimed to have provided police, and his "inadequate opportunity" to observe the offender during the shooting. Defense counsel concluded no independent basis of reliabil-

ity existed for the in-court identification.

The court commented that the State presented evidence that Cruz: had a sufficient opportunity to observe in a place where "considerable" observation was possible; had a memory for events and an ability to communicate those memories; and gave a detailed description to police. Finding a "sufficient attenuation that the in-court identification can stand," the court denied defendant's motion to suppress.

Next, Marco Basurto testified he was drinking at the subject tavern with Cruz around 12:15 a.m. on the date of the incident. The two men briefly conversed over a beer, and Cruz eventually went somewhere. A short time later, another patron told Basurto that Cruz was having a problem with a group of men outside the tavern. Basurto went out and saw 10 or 12 persons accusing Cruz of being an opposing gang member, so he told the group that Cruz was not a "gangbanger" and had a house and family. Basurto recognized one of the individuals in that group as defendant. Cruz and Basurto then returned to the bar for about a half hour.

Cruz left, and Basurto walked him outside to the curb. Basurto returned to the tavern as Cruz crossed the street toward his van. Opening the tavern door, Basurto heard gunshots; he jumped inside for protection since the shots sounded close. Basurto then went outside and saw Cruz lying facedown in the middle of the street.

Basurto further testified he had seen defendant a "couple times" before. He also claimed he told police he saw defendant outside the tavern on the night of the shooting.

The parties then stipulated to the testimony of Dr. Murgendra, who treated Cruz at the hospital and diagnosed that he suffered multiple gunshot wounds to the abdomen, right chest and back. The State then rested.

Detective John Howe testified for the defense that he interviewed Cruz at the hospital on November 7, 1984. Howe recalled Cruz was conscious, but in pain and on medication. Cruz told Howe he was confronted by members of the Latin Kings and Warlords street gangs while in the tavern. He also told Howe that Marco walked him all the way to the corner, at which point he continued on alone.

Howe further averred that Cruz was unable to identify the offender from a police photo album, but provided a physical description. According to Howe, Cruz described his assailant as a white male Hispanic, approximately 5 feet 6 inches, slim build, dark hair, around 20 years old. Howe could not recall whether Cruz reported any other descriptive features; no additional characteristics were included in

Howe's police report, prepared 20 days after his interview with Cruz.

Howe stated that the scene of the shooting was well-lighted, but no streetlight was located directly across Damen Avenue from the tavern. He also represented that no empty lot existed on the east side of that block.

The defense next introduced the stipulated testimony of Detectives O'Shea and Johnson, which indicated that they spoke with Miriam Cruz, the victim's wife, shortly after the shooting. She told them she and her husband were arguing earlier that day and he left the house to go drinking. The defense then rested.

Reviewing the evidence, the court found Cruz to be a "very, very credible witness." It commented that Cruz was able to articulate what he saw clearly and remembered the events without any difficulty, and noted that Basurto's testimony corroborated Cruz on several important points, particularly the placement of defendant at the scene shortly before the shooting. The court further found that the area was "extremely well-lit," providing Cruz with a good opportunity to see the gunman.

The circuit court then found defendant guilty on all three counts of aggravated battery and two counts of armed violence, but acquitted him of attempted murder. Defendant's motions for reconsideration and a new trial both were denied, and he subsequently was sentenced to 15 years' imprisonment.

I

The first contention on appeal is that the circuit court erred in failing to suppress Cruz' in-court identification of defendant as the fruit of an unlawful arrest. Defendant claims the in-court identification was tainted in that: Cruz' description of the offender to the police differed from defendant's actual appearance; Cruz' recollection at trial of the description he gave police was unreliable; Cruz only had a few seconds to view his assailant; and Cruz had two opportunities to review defendant prior to making the in-court identification.

■ An in-court identification of an offender by a victim consists of three distinct elements: (1) the victim is present at trial to testify as to the occurrence and identify the defendant as the perpetrator; (2) the victim has knowledge of the prior criminal episode, and the ability to articulate the incident and identify defendant based upon his observations at the time of the offense; and (3) defendant is physically present in the courtroom, so that the victim can refer to his appearance and compare it to that of the perpetrator. (*United States v. Crews* (1980), 445 U.S. 463, 471, 63 L. Ed. 2d 537, 546, 100 S. Ct.

1244, 1250.) The in-court identification need not be suppressed as the fruit of an unlawful arrest if "none of these three elements 'has been come at by exploitation' of the violation of the defendant's Fourth Amendment rights." *(United States v. Crews,* 445 U.S. at 471, 63 L. Ed. 2d at 546, 100 S. Ct. at 1250, quoting *Wong Sun v. United States* (1963), 371 U.S. 471, 488, 9 L. Ed. 2d 441, 455, 83 S. Ct. 407, 417.) In the instant case, none of these elements of an in-court identification were achieved as a result of defendant's illegal arrest, as the following analysis demonstrates.

## A

■ First, Cruz' presence at trial did not result from any police misconduct. The police were notified of the shooting shortly after it occurred and began their investigation immediately. Cruz gave the police a description of his assailant as soon as he was released from intensive care, and cooperated throughout the investigation. Cruz' identity was not discovered nor his cooperation obtained only as a result of an unlawful arrest; rather, "the victim's identity was known long before there was any official misconduct, and [his] presence in court is thus not traceable to any Fourth Amendment violation." *United States v. Crews,* 445 U.S. at 471-72, 63 L. Ed. 2d at 546, 100 S. Ct. at 1250.

## B

■■ ■ Second, the illegal arrest did not taint Cruz' ability to provide reliable identification testimony during trial. An in-court identification need not be suppressed when based upon a witness' independent recollection of his initial encounter with the offender, uninfluenced by the unlawful arrest. *(United States v. Crews,* 445 U.S. at 473, 63 L. Ed. 2d at 547, 100 S. Ct. at 1251; *People v. Houston* (1986), 151 Ill. App. 3d 102, 112, 502 N.E.2d 1111.) Recently, our supreme court enumerated the circumstances to be considered in evaluating the reliability and independent basis of an in-court identification *(People v. Slim* (1989), 127 Ill. 2d 302, 307-08, 537 N.E.2d 317):

> "(1) the opportunity the victim had to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of the criminal; (4) the level of certainty demonstrated by the victim at the identification confrontation; and (5) the length of time between the crime and the identification confrontation."

Application of these factors to the instant record demonstrates that Cruz' in-court identification was not the result of exploiting the un-

lawful arrest but was based instead on circumstances sufficiently independent of the arrest to expurgate any taint. *People v. Houston,* 151 Ill. App. 3d at 112.

■ Of the five circumstances reviewed in *Slim,* the most important is the victim's opportunity to view the offender. (*People v. Moore* (1983), 115 Ill. App. 3d 266, 270, 450 N.E.2d 855.) Cruz testified defendant first shot from about 20 feet away, and eventually neared to within four or five feet; defendant's face was uncovered, and Cruz looked straight at him during the shooting; and Cruz and Howe averred that the lighting conditions were "very bright" and the area was "well-lighted." There is no basis, therefore, to reject the circuit court's conclusion that Cruz had a sufficient opportunity to view his assailant.

■ Next, Cruz' degree of attention during the shooting decidedly was focused on defendant. As the victim in the incident, he was more than a mere casual observer. (See *People v. Frisby* (1987), 160 Ill. App. 3d 19, 33, 512 N.E.2d 1337.) He also testified that he did not lose consciousness during the attack and was able to watch defendant until his escape down a gangway on the east side of Damen. Indeed, the circuit court commented on Cruz' ability to articulate clearly the events surrounding the incident.

Concerning the accuracy of his prior description, Cruz gave police a detailed report of defendant's appearance while still in the hospital. Defendant repeatedly urges that Cruz only gave police a general description and failed to mention important characteristics, such as a beard and mustache. Defendant relies on the fact the police report did not include any reference to facial hair. Cruz, however, insisted throughout his testimony that his initial description included such details; the investigating officer, Detective Howe, did not contradict that testimony, but merely stated he did not remember if Cruz mentioned a beard and mustache.

■ In a bench trial, the court must determine the credibility of the witnesses, evaluate the evidence and resolve any inconsistencies therein. (*People v. Slim,* 127 Ill. 2d at 307.) The circuit court was well aware of the discrepancies between the description inserted into the police report and the description provided by Cruz at trial, and nevertheless determined Cruz to be "steadfast" and "very, very credible." The court also may have considered the police report's description to be unreliable since it was prepared almost three weeks after Howe's interview of Cruz. The evidence of record, therefore, is not so unsatisfactory or improbable that we may reject the circuit court's finding as to the accuracy of Cruz' prior detailed description of defendant.

■ Next, Cruz' identification of defendant demonstrated a convincing level of certainty. He initially was shown two photograph albums, but did not identify anyone; defendant's photograph was not part of that display. Later, however, he positively selected defendant twice in separate, nonsuggestive pretrial identification procedures.[1] Certainly, as defendant suggests, such intervening identifications might affect the reliability of courtroom identifications under some circumstances. (*United States v. Crews*, 445 U.S. at 472-73, 63 L. Ed. 2d at 546-47, 100 S. Ct. at 1250-51.) The instant case does not provide such a situation; however, the record contains ample support for the court's conclusion that Cruz' in-court identification had an independent origin.

■ Finally, the length of time between the shooting and the first identification confrontation was approximately 1½ months. Under the circumstances presented, which include the nature of the assault, Cruz' "considerable" opportunity to view the offender, and his extended hospital stay which delayed the initial police interview, the length of time was not significant. See *People v. Slim*, 127 Ill. 2d at 313-14 (and cases cited therein).

■ There is no basis for this court to dispute the circuit court's finding that Cruz' in-court identification of defendant was based on his independent recollection of the initial encounter with the offender, uninfluenced by the two pretrial identifications. His ability to identify defendant, therefore, was not a result of or tainted by the unlawful arrest. *United States v. Crews*, 445 U.S. at 473, 63 L. Ed. 2d at 547, 100 S. Ct. at 1251.

### C

■ Third, defendant's presence at trial cannot be deemed a suppressible fruit; the illegality of his arrest cannot deprive the State of the opportunity to prosecute him using evidence untainted by police misconduct. (*United States v. Crews*, 445 U.S. at 474, 63 L. Ed. 2d at 547, 100 S. Ct. at 1251.) Because none of the three elements that make up an in-court identification "came at the exploitation" of defendant's unlawful arrest, the circuit court did not err in refusing

---

[1]The reliance on these two pretrial identifications, which were suppressed by the circuit court, is not intended to provide evidentiary value to those identifications; to do so would undermine the objectives of the exclusionary rule. Instead, "the accurate pretrial identifications assume significance only to the extent that they indicate that the witness' ability to identify [defendant] antedated any police misconduct, and hence that [his] in-court identification had an 'independent source.' " *United States v. Crews*, 445 U.S. at 473 n.18, 63 L. Ed. 2d at 547 n.18, 100 S. Ct. at 1251 n.18.

to suppress Cruz' in-court identification of defendant.

## II

Defendant next contends that the State failed to prove his guilt beyond a reasonable doubt. He asserts that the testimony of the State's two witnesses, Cruz and Basurto, was conflicting and impeached on several points. Particularly, he argues that Cruz, the sole eyewitness, was impeached or contradicted on the following items: the offender's age; the description he gave to police; whether he was first confronted by the gang members outside or inside the tavern; whether he consumed half a can or two to three beers; the amount of time he spent in the tavern after he returned from the initial confrontation; how far Basurto walked with him when he departed; the presence of a streetlight directly across the street from the tavern; the existence of an empty lot on the east side of the block; the time he left home to go to the tavern; and, his testimony that he was looking at defendant the entire incident despite evidence he was shot in the back. Defendant characterizes these points as "vital," and concludes the resulting conflicts and inconsistencies in these facts create reasonable doubt.

A court of review will not disturb a criminal conviction unless the evidence is so improbable or unsatisfactory that it creates a reasonable doubt of defendant's guilt; the question is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Emphasis in original.) (*People v. Collins* (1985), 106 Ill. 2d 237, 261, 478 N.E.2d 267.) A positive identification by a single, credible witness is sufficient to support a finding of guilt. (*People v. Molstad* (1984), 101 Ill. 2d 128, 133, 461 N.E.2d 398.) In resolving defendant's guilt or innocence when dependent upon the credibility of the witnesses and the weight to be given their testimony, it is the exclusive province of the trier of fact to resolve any conflicts in the evidence. *People v. Collins*, 106 Ill. 2d at 261-62.

The circuit court, as trier of fact in the instant case, resolved the conflicts in the evidence in favor of the State and against defendant, concluding that Cruz was a "very, very credible" witness. Cruz' identification of defendant as his assailant was found reliable; the court determined that Cruz had a good opportunity to view his attacker in an area with considerable lighting where adequate observation was possible. Further, Cruz looked at defendant's uncovered face during the incident from a continuously decreasing distance. The fact

Cruz was shot in the back does not necessarily make his identification testimony unreliable; as the circuit court noted, he still would have had "a considerable opportunity to observe" defendant. The evidence here is not so unsatisfactory as to provide a basis to reject Cruz' positive identification of defendant as his assailant, which alone is sufficient to support the conviction. *People v. Molstad,* 101 Ill. 2d at 133.

■■ Further, the other instances of Cruz' impeachment raised in defendant's brief are not so significant as to raise a reasonable doubt. In reviewing the effect of such impeachment on Cruz' credibility, this court also may take note of any corroboration. (See *People v. Kline* (1982), 92 Ill. 2d 490, 505-06, 442 N.E.2d 154.) A review of the record reveals significant corroboration of Cruz' testimony by both Basurto and Howe with respect to the occurrence and progression of the major details of the shooting; in addition, in finding Cruz credible, the circuit court noted Cruz' ability to recollect events at the time of the shooting, Detective Howe's corroboration regarding lighting at the scene, and Basurto's placement of defendant at the tavern immediately prior to the shooting. In contrast, the purported inconsistencies and impeachment of Cruz asserted in defendant's brief involve mostly minor details rather than "vital questions of fact."

■■ The court was presented with sufficient evidence which, if believed, established defendant's guilt beyond a reasonable doubt. As trier of fact, it believed Cruz and resolved the inconsistencies against defendant; we cannot say its determination was erroneous.

For the reasons stated above, the judgment of the circuit court is affirmed.

Judgment affirmed.

SCARIANO and DiVITO, JJ., concur.