No. 2--05--0484          Filed 3/12/07

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Du Page County. |
| Plaintiff-Appellee, | ) ) | No. 04--CF--2514 |
| v. | ) ) | |
| DAVID A. DOLL, | ) ) | Honorable Robert J. Anderson, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE BYRNE delivered the opinion of the court:

Following a bench trial, defendant, David A. Doll, was convicted of unlawful restraint (720 ILCS 5/10--3(a) (West 2004)) and sentenced to six years' imprisonment. Because defendant was convicted of unlawful restraint of a minor, defendant was required to register as a sex offender pursuant to the Sex Offender Registration Act (Registration Act) (730 ILCS 150/2(B)(1.5), 3(a) (West 2004)). He appeals, contending that (1) the State failed to prove him guilty of unlawful restraint beyond a reasonable doubt; and (2) the Registration Act is unconstitutional as applied to him because his crime did not involve any sexual motivation or component. For the reasons stated, we affirm his conviction and uphold the constitutionality of the Registration Act as it applies to him.

Defendant was charged by indictment with child abduction (720 ILCS 5/10--5(b)(10) (West 2004)), unlawful restraint (720 ILCS 5/10--3(a) (West 2004)), and sexual exploitation of a child (720 ILCS 5/11--9.1(a--5) (West 2004)). The charges arose from an incident that occurred on June 29,

2004, at the apartment complex where defendant was employed as a janitor. On the charge of unlawful restraint, the State alleged that defendant knowingly and without legal authority detained six-year-old Tyeria L., in that he took her into a closed staircase (referred to at trial as the fire escape stairway), picked up Tyeria, and held her upside down.

At the bench trial, Tyeria was seven years old. Tyeria testified that on the day in question, she lived in an apartment with her mother and brothers. Tyeria testified that she and her friends, Jenique and Ojamei, were cheerleading for Tyeria's brother, who was playing football. After cheerleading, Tyeria and her friend T.T. saw defendant outside the apartment watering plants. Tyeria identified defendant in court. T.T. asked defendant to spray them with the hose. Defendant sprayed Tyeria and T.T.

After she finished playing, Tyeria went back into the apartment building and sat on the hallway steps inside the front entrance. She saw defendant washing the front windows in the hallway entrance. Defendant asked Tyeria if she wanted to do somersaults, but she did not respond. Tyeria stated that defendant then "grabbed" her and "took" her to the fire escape stairway. Tyeria stated that, once there, defendant "jumped me up, and then he grabbed my pants, and my pants fell down." Using a doll, Tyeria demonstrated what had occurred. Tyeria held the doll upside down by its ankles, lifted the doll up, held it at the waist, and then slid her hands up and stated that defendant "grabbed" her pants and her "pants came down" to her feet. Tyeria told defendant to put her down and he put her down. She did not cry. The prosecutor asked Tyeria to demonstrate how long defendant held her, telling her to say "start" to represent when she was first held by the ankles and to say "stop" to represent when defendant put her down. The record reflects that the demonstration took about 15 seconds. Tyeria stated that she returned to the park after defendant let her go.

Tyeria testified that she wore capri pants that day, which were loose because they were a little too big. Tyeria stated that she usually wore a belt with those pants but did not on that day. When Tyeria arrived at the park, she told her two brothers and her two cousins what had happened. Tyeria did not tell her mother about the incident until the following day.

On cross-examination, Tyeria testified that defendant pulled her into the fire escape stairway and she told defendant that she did not want to go there. When asked whether she told her mother that she had agreed to go with defendant, Tyeria responded that she did not tell her that she had agreed to go. Tyeria reiterated that her pants fell down because defendant grabbed them.

Patrick Dempsey, a police officer who investigated the incident, testified that when he asked defendant what had happened, defendant at first denied knowing anything. Later, defendant told Dempsey that he remembered a little girl asking if she could help him wash the windows. At first, defendant denied that the little girl actually washed the windows, but he later said that the little girl used a squeegee to wash the windows. When Dempsey asked defendant if he knew the girl, defendant denied having seen her before, but he later stated that he had seen her in the complex and talked to her a few times and that, possibly, he fixed her bike. When confronted about the accusation against him, defendant denied ever touching or picking up Tyeria or taking her to the fire escape stairway. Dempsey testified that defendant made a point of telling him that he liked kids and protected them. Dempsey stated that he kept telling defendant about what Tyeria had stated; that defendant picked her up, flipped her over, took her clothes off, and took her into the fire escape area. Dempsey told defendant that Tyeria was a very believable girl. At that point, defendant admitted to Dempsey that he picked up the little girl at the waist so she could wash the windows, that she moved around, and that she did flip over. After initially denying that Tyeria's top fell over her face when

she flipped over, and that her pants came down to her ankles, defendant told Dempsey that, when he picked the girl up, she flipped over and her head was facing the floor and her top came down over her face, exposing her chest and back area. Defendant explained to Dempsey that he was holding Tyeria and her pants at her ankles so she would not hit the floor. Defendant stated that, after the little girl started screaming and tried to get down, he put her down and then she ran out the door.

Defendant wrote the following statement about the events, which Dempsey read to the court:

"On Monday, 6/28/04, a little girl *** had approached custodian David Doll in the foyer requesting work to wash the windows. I observed her doing the lower windows. Then she asked me to pick her up so she could wash the upper part of the window, when done I held a grasp of her coming down but she twirled upside down, by her wearing loose clothes [illegible] come down exposing her chest/underwear[,] while I grabbed hold of her ankles to prevent her from falling and being injured -- I am sorry if you thought I were [sic] (attempting) to victimize your daughter in any way[,] but I don't associate with criminal activity and for 'god' nothing as to what you may think had happened here as you listened to your daughter[']s story."

Dempsey admitted that when he spoke to Tyeria, she did not say that defendant had touched her in any sexual area. Dempsey further stated that Tyeria never told him that she had told defendant that she did not want to go to the fire escape staircase. Tyeria did not tell Dempsey that defendant grabbed her pants or pulled them down.

On redirect, Dempsey stated that, at the time he interviewed defendant, Tyeria had told Dempsey that a man came to her, grabbed her by the arm, and walked her into the fire escape

stairway. Dempsey testified that his interview with defendant lasted about an hour and during that time he changed his story at least four times.

Crystalon Gardner, Tyeria's mother, testified that Tyeria had told her that she had agreed to go into the fire escape staircase with defendant; that defendant did not force her or take her to the fire escape staircase against her will. Gardner explained that the fire escape staircase is used by the tenants to exit the apartment building and to access the laundry area.

Following closing argument, the trial court found defendant not guilty of child abduction and of sexual exploitation of a child, because the court did not believe that the State had proved "the sexual gratification part by proof beyond a reasonable doubt." However, the court found defendant guilty of unlawful restraint. As to the unlawful restraint charge, the court noted that it found Tyeria's testimony to be clear, credible, and convincing. The court further stated that it believed the testimony of the officer and concluded that defendant's shifting from one position to another was evidence of a guilty conscience. The trial court further observed that, because defendant was found guilty of unlawful restraint, he was required to register as a sex offender. See 730 ILCS 150/2(B)(1.5), 3(a) (West 2004).

Defendant filed a motion for a new trial and a motion to declare the Registration Act unconstitutional, which were denied. Defendant was sentenced to an extended term of six years' imprisonment. The trial court denied his motion to reconsider his sentence. Defendant timely appeals.

Defendant first contends that the State failed to prove him guilty of unlawful restraint beyond a reasonable doubt. On review, a conviction will not be set aside on grounds of insufficient evidence unless the proof is so improbable or unsatisfactory that there remains a reasonable doubt as to the

defendant's guilt. People v. Collins, 106 Ill. 2d 237, 261 (1985). The relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. People v. Cunningham, 212 Ill. 2d 274, 278 (2004); Collins, 106 Ill. 2d at 261.

Defendant argues that he was not proved guilty of unlawful restraint beyond a reasonable doubt because Tyeria's testimony was unreliable and contradicted by Gardner and Dempsey. According to defendant, Tyeria's testimony was unreliable based on her young age, the fact that she could not recall with certainty her activities that day, and the fact that the State coached her answers. Defendant argues that since Tyeria received coaching for the uncomplicated task of identifying defendant, it is reasonable to assume that she also received coaching on other important matters.

Defendant further points out that Tyeria testified that defendant pulled her onto the fire escape staircase, but her mother testified that Tyeria told her that she agreed to go there with defendant and that defendant did not force her or take her against her will. Defendant also points to Dempsey's testimony that Tyeria did not tell Dempsey that she had told defendant that she did not want to go onto the fire escape staircase or that defendant had "grabbed" or "pulled" down her pants. Defendant asserts that, if the incident had been an illegal detention against Tyeria's will, Tyeria would have attached considerable significance to the fact that her pants fell down, but instead Tyeria told Dempsey that she was more upset about not wearing a belt that day than about her pants falling down.

In a bench trial, the circuit court determines the credibility of the witnesses, evaluates the evidence, and resolves any inconsistencies therein. People v. Ortiz, 188 Ill. App. 3d 506, 514 (1989). The testimony of a single eyewitness is sufficient to sustain a conviction. People v. Ramos, 339 Ill.

App. 3d 891, 901 (2003). A reviewing court will not substitute its judgment for that of the trier of fact on questions involving the weight of the evidence or the credibility of witnesses unless the evidence is so palpably contrary to the judgment or so unreasonable, improbable, or unsatisfactory as to create a reasonable doubt of the defendant's guilt. Ramos, 339 Ill. App. 3d at 901.

In this case, the trial court was aware of Tyeria's age, the time that had passed since the incident, Tyeria's difficulty in articulating the meaning of a lie, and the appearance of coaching, as these points were argued by the defense at trial. These issues, while not insignificant, relate primarily to collateral matters. Moreover, we do not find that Tyeria impeached her testimony that defendant grabbed her and took her through a door, "jumped" her up, and grabbed her pants and pulled them down to her ankles just because she attached some significance to the fact that she forgot to wear her belt. Additionally, the trial court also was aware of the contradicting evidence between Tyeria and Gardner regarding whether defendant grabbed Tyeria's arm and pulled her to the fire escape stairway or whether Tyeria was not forced to go. Although Gardner's statement contradicts Tyeria's, Tyeria told Gardner the day after the incident and there is no indication regarding Tyeria's disposition or the circumstances surrounding that conversation. Regardless, Tyeria's testimony that defendant took her to the fire escape stairway against her will was remarkably unyielding at trial. Tyeria testified clearly and convincingly regarding her encounter with defendant, and the trial court found Tyeria's testimony more credible. Furthermore, that the trial court chose to give defendant the benefit of the doubt on the other charges does not, in our minds, diminish Tyeria's credibility regarding the offense of unlawful restraint.

Defendant asserts that the State's failure to call Tyeria's brothers and cousins to testify concerning what Tyeria told them after the incident gives rise to the inference that their testimony would have been unfavorable to the State's case. We disagree.

As a general rule, if a potential witness is available and appears to have special information relevant to the case, so that his testimony would not merely be cumulative, and the witness's relationship with the State is such that he would ordinarily be expected to favor it, the State's failure to call the witness may give rise to a permissible inference that, if the witness were called, the witness's testimony would have been unfavorable to the State's case. People v. Jimerson, 69 Ill. App. 3d 403, 412 (1979); People v. Irby, 237 Ill. App. 3d 38, 68 (1992). Such a negative inference is permissible only under certain circumstances: for example, where the State fails to call a witness who possesses unique knowledge of a crucial, disputed issue of fact (People v. Williamson, 78 Ill. App. 2d 90 (1966)), or where the government has caused the absence of a material witness (People v. Williams, 40 Ill. 2d 367 (1968)). However, no negative inference is raised when the witness is also known and available to the defense yet is not called by it. Irby, 237 Ill App 3d at 69; People v. Zenner, 84 Ill. App. 3d 566, 571-72 (1980).

We observe that defendant argued at trial that the State's failure to call any of Tyeria's brothers or cousins to testify would give rise to a negative inference. The trial court disagreed, noting that the State's option to call a witness to testify was a matter of trial strategy. The court, however, did grant defendant the time to call the witnesses if he felt that their testimony would impeach Tyeria's, but defendant did not call any of them to testify. Thus, defendant cannot assert that the witnesses were not equally available to him, and he cannot raise a negative-inference argument.

In any event, even if we were to assume that the State's failure to call the witnesses would give rise to such a negative inference, this would not warrant the reversal of defendant's conviction. " '[I]t is fundamental that the [State] may accept the risk of negative inferences [arising] from the unexplained absence of a witness so long as the offense is otherwise proved.' " People v. Scott, 38 Ill. 2d 302, 306 (1967), quoting People v. McElroy, 30 Ill. 2d 286, 290 (1964). The testimony of the complainant need not be corroborated and need not be unequivocal. Rather, the complainant's testimony, when viewed in the light most favorable to the prosecution, must support a finding by a rational trier of fact that the essential elements of the crime were proved beyond a reasonable doubt. People v. Soler, 228 Ill. App. 3d 183, 197 (1992). Here, the State presented sufficient competent evidence through Tyeria's testimony to establish defendant's commission of the offense of unlawful restraint when defendant knowingly, without legal authority, detained Tyeria. See 720 ILCS 5/10--3(a) (West 2004).

In sum, the trial court knew about the contradictions and nevertheless found defendant guilty of unlawful restraint based primarily on what it believed to be the clear, credible, and convincing testimony of Tyeria. After viewing the complainant's testimony in the light most favorable to the State, we conclude that a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

Defendant next contends that the Registration Act is unconstitutional as applied to him, because his crime did not involve any sexual motivation or sexual component and therefore should not be included as a sex offense. Because defendant's argument presents questions of law--statutory construction and constitutional validity--our standard of review is de novo. People v. Malchow, 193 Ill. 2d 413, 418 (2000).

The Registration Act provides in part:

"(A) *** '[S]ex offender' means any person who is:

(1) charged pursuant to Illinois law, or any substantially similar federal, *** sister state, or foreign country law, with a sex offense set forth in subsection (B) of this Section or the attempt to commit an included sex offense, and:

* * *

(B) As used in this Article, 'sex offense' means:

* * *

(1.5) A violation of any of the following Sections of the Criminal Code of 1961, when the victim is a person under 18 years of age, the defendant is not a parent of the victim, and the offense was committed on or after January 1, 1996:

10--1 (kidnapping),

10--2 (aggravated kidnapping),

10--3 (unlawful restraint),

10--3.1 (aggravated unlawful restraint).

An attempt to commit any of these offenses."  730 ILCS 150/2 (West 2004).

In this case, defendant was convicted of unlawful restraint and was required to "register [as a sex offender] in person and provide accurate information as required by the Department of State Police," pursuant to section 3(a) of the Registration Act (730 ILCS 150/3(a) (West 2004)).

The Registration Act was enacted by the Illinois legislature to create an additional method of protecting children from, inter alia, the increasing incidence of sexual assault and sexual abuse.

84th Ill. Gen. Assem., House Proceedings, June 23, 1986, at 208. The Registration Act was designed to aid law enforcement agencies by making the offender's address readily available to law enforcement agencies. People v. Adams, 144 Ill. 2d 381, 387 (1991) (a case involving a parent and a charge of criminal sexual assault); see also Malchow, 193 Ill. 2d at 420 (a case involving aggravated criminal sexual abuse).

Defendant appears to base his argument on substantive due process grounds in that he seeks to bar the government from arbitrarily exercising its power without the reasonable justification of serving a legitimate interest. See Daniels v. Williams, 474 U.S. 327, 331, 88 L. Ed. 2d 662, 668, 106 S. Ct. 662, 665 (1986). Since the challenged statute does not affect a fundamental constitutional right, we must apply the rational-basis test to determine whether the statute violates due process. Russell v. Department of Natural Resources, 183 Ill. 2d 434, 446-47 (1998). The Registration Act must bear "a reasonable relationship to the public interest intended to be protected, and the means adopted must be a reasonable method of accomplishing the desired objective." Russell, 183 Ill. 2d at 447. "In applying this test, we identify the public interest that the statute is intended to protect, examine whether the statute bears a reasonable relationship to that interest, and determine whether the method used to protect or further that interest is reasonable." People v. Lindner, 127 Ill. 2d 174, 180 (1989).

"Under the rational-basis test, a statute is presumed to be valid, and the party challenging the statute has the burden of proving that the statute is irrational. [Citations.] As long as there is a conceivable basis for finding a rational relationship, the law will be upheld. [Citations.]" People v. Kohrig, 113 Ill. 2d 384, 398 (1986); see also Lulay v. Lulay, 193 Ill. 2d 455, 469 (2000) (holding that a statute is presumed constitutional and that the challenger has the burden of rebutting that

presumption).  We must consider " ' "the statute in its entirety, noting the subject it addresses and the legislature's apparent objective in enacting it." '  [Citations]."  Lindner, 127 Ill. 2d at 181.

After reviewing all the provisions of the Registration Act, we find it clear that every provision relates to the registration of convicted offenders of children's personal safety as defined by the act.  The manifest purpose of the Registration Act is to help law enforcement protect children from child abduction, kidnapping, unlawful restraint, sexual assault, and sexual abuse by making the offender's current address "available to law enforcement agencies, which may then question and, if necessary, detain him under appropriate circumstances."  Adams, 144 Ill. 2d at 387.

After finding that the public interest is served by the Registration Act, we must then determine whether there is a rational relationship between the statute and the interest served. Lindner, 127 Ill. 2d at 179; Kohrig, 113 Ill. 2d at 398.  The Registration Act serves no purpose other than governing the registration of sex offenders and the release of their identities and addresses in the State of Illinois.  It is evident that a rational relationship exists between the principle and the means of actualizing that principle.  People v. Fuller, 324 Ill. App. 3d 728, 732 (2001).  The Registration Act serves the universal principle of protecting children from harm.  The legislature has decided to protect the children of Illinois by enabling law enforcement officials to more easily locate prior offenders.  The Registration Act is thus reasonably related to the public interest of protecting children from harm.

The finding of a reasonable relationship between the statute and the public interest allows us to advance to the final step: determining whether the method used by the Registration Act is reasonable.  Russell, 183 Ill. 2d at 446-47.  The Registration Act requires any convicted sex offender to register with the chief of police of the municipality or county where he or she resides for more

than 10 days. 730 ILCS 150/3(a) et seq. (West 2004). The offender must provide his date of birth and update any changes in his home address, work address, and employer for either 10 years or the rest of his or her natural life. 730 ILCS 150/6 through 8--5 (West 2004).

The supreme court has articulated on this final step of the rational-basis analysis. "As the legislative debates indicate, the public interest to be served by the Registration Act is the assistance to law enforcement in the protection of children. *** We find nothing unreasonable in the statute's method of serving its purpose. *** There is a direct relationship between the disability, the registration of child sex offenders, and the purpose served by the statute, the protection of children." Adams, 144 Ill. 2d at 390-91.

Defendant alleges the absence of a rational connection between the offense of unlawful restraint and the purpose of the Registration Act. Like a few defendants before him, he alleges nothing more than the unfairness of being branded a sex offender when his crime was not sexually motivated. See People v. Beard, 366 Ill. App. 3d 197 (2006); People v. Johnson, 363 Ill. App. 3d 356 (2006), appeal allowed, 218 Ill. 2d 550 (2006); Fuller, 324 Ill. App. 3d 728.

For example, in Fuller, the defendant stole a van while the owner went into a store, leaving his two children, a girl and a boy, ages 6 and 15, inside the van. Based on the children's presence in the stolen van, the defendant was convicted of aggravated kidnapping of the minors and, therefore, was required to comply with the Registration Act. Fuller, 324 Ill. App. 3d at 731. The defendant challenged the Registration Act as applied to him, on due process grounds. Fuller, 324 Ill. App. 3d at 731. The court observed that every provision of the Registration Act relates to registration of convicted sex offenders and that the act serves the purpose of governing sex offender registration and the release of such information. Fuller, 324 Ill. App. 3d at 732. The court further noted that the

legislature intended to protect the children of Illinois from sex crimes by creating the Registration Act, which allows law enforcement officials to more easily locate child sex offenders. Fuller, 324 Ill. App. 3d at 732-33. Thus, the court concluded that the Registration Act was reasonably related to the public interest of protecting children from harm and rejected the defendant's argument that aggravated kidnapping has no relationship to the Registration Act's purpose of protecting children from sex offenders. Fuller, 324 Ill. App. 3d at 733.

In Fuller, however, there was some evidence of a "sexual component" to the defendant's crime. The arresting officer testified that, when he asked the defendant what he intended to do with the children whom he kidnapped, the defendant told the officer that " 'he was going to find a hotel room and ask the girl if she had any friends.' " Fuller, 324 Ill. App. 3d at 733. In this case, defendant contends that there is absolutely no evidence of a sexual component to his crime and that the law is arbitrarily applied to him without the justification of serving the purpose of the Registration Act. That argument was recently espoused in People v. Johnson, 363 Ill. App. 3d 356 (2006), which defendant urges us to follow.

In Johnson, the defendant pleaded guilty to aggravated kidnapping, which automatically classified him as a sex offender pursuant to the Registration Act. See 730 ILCS 150/2(B)(1.5) (West 2000). Johnson, like defendant in this case, contended that the Registration Act was arbitrary and unreasonable when no sexual motivation was involved. Johnson, 363 Ill. App. 3d at 363. The First District, Second Division, Appellate Court agreed. Distinguishing the case from Fuller, and relying on other jurisdictions that had reached similar decisions, the court found that there was no rational basis for requiring the defendant to register as a sex offender where he had no history of committing

sex offenses and his offense of aggravated kidnapping was not sexually motivated and had no sexual purpose. Johnson, 363 Ill. App. 3d at 363.

The dissent in Johnson noted, however, that it is the nature of the offense--aggravated kidnapping--that triggers the Registration Act, not the presence of a sexual component. Johnson, 363 Ill. App. 3d at 364 (Wolfson, J., specially concurring in part and dissenting in part). Moreover, the dissent found it rational for the legislature to reason that a person who kidnaps a child may commit a sexual crime against that child. Johnson, 363 Ill. App. 3d at 364-65 (Wolfson, J., specially concurring in part and dissenting in part). The dissent further commented that the legislature had the power to protect children from a person convicted of aggravated kidnapping by requiring that person to register as a sex offender. Johnson, 363 Ill. App. 3d at 365 (Wolfson, J., specially concurring in part and dissenting in part); see also In re Phillip C., 364 Ill. App. 3d 822 (2006) (largely relying on Fuller but noting the majority opinion in Johnson).

Defendant acknowledges that Johnson was rejected by the majority in Beard, 366 Ill. App. 3d 197. There, the defendant argued that the Registration Act was unconstitutional as applied, because his crime of aggravated kidnapping of two children did not have a sexual component. The First District, Fifth Division, Appellate Court held that the statute does not require such blatant evidence of a sexual component and that aggravated kidnapping was included in the statute because the General Assembly deemed that aggravated kidnapping often is a precursor to more grievous sex offenses. Beard, 366 Ill. App. 3d at 202.

The Beard court followed what it deemed to be a valid argument presented by the dissent in Johnson. Beard, 366 Ill. App. 3d at 203. The court pointed out that the aggravated kidnapping statute lists eight different methods of committing aggravating kidnapping, only one of which

specifically mentions children (see 720 ILCS 5/10--2(a)(2) (West 2002)). However, the Registration Act classifies aggravated kidnapping as a sex offense only if the victim of the aggravated kidnapping is younger than 18 years of age and the putative kidnapper is not the victim's parent (730 ILCS 150/2(B)(1.5) (West 2002)). Thus, the court concluded that the sex offender registration and notification provisions are not triggered in every aggravated kidnapping case but only when the victim of the kidnapping is a youth who is taken by someone other than a parent. Beard, 366 Ill. App. 3d at 203. These qualifying characteristics support the conclusion that a sexual component is immaterial for purposes of protecting children from triggering offenses. The court further surmised that the General Assembly had a rational basis to apply the registration and notification requirements based on its view that kidnappers of children, those convicted of the unlawful restraint of children, or those who attempt those offenses, may have a propensity to commit sexual crimes against children. Beard, 366 Ill. App. 3d at 203.

We agree with the reasoning employed by the majority in Beard and the dissent in Johnson. We find that the General Assembly had a rational basis to apply the Registration Act to those convicted of the unlawful restraint of children, because those defendants may have a greater propensity to harm a child. It is the nature of the offense of unlawful restraint as well as the age of the victim that trigger the Registration Act, and it is rational for the legislature to reason that a person other than the child's parent who unlawfully restrains a child is more likely to harm the child. As stated by the Beard court: "It is not the role of this court to override the General Assembly's rational basis for the statute." Beard, 366 Ill. App. 3d at 203. Accordingly, we conclude that the application of the Registration Act to defendant does not violate his due process rights. We believe the relevant

portions of the Registration Act are primarily concerned with protecting a child from being taken by someone other than his or her parent, regardless of the presence or absence of a sexual component.

For the preceding reasons, the judgment of the circuit court of Du Page County is affirmed.

Affirmed.

McLAREN and KAPALA, JJ., concur.