Fourth Division
January 31, 2008

No. 1-06-0005

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 05 MC1 439010 |
| | ) | |
| ALFRED IRVINE, | ) | Honorable |
| | ) | Kay Marie Hanlon, |
| Defendant-Appellant. | ) | Judge Presiding. |

PRESIDING JUSTICE NEVILLE delivered the modified opinion of the court:

Defendant, Alfred Irvine, was found guilty of domestic battery and sentenced to 12 months of conditional discharge, to mandatory domestic violence classes and to fees and fines of $379. In this appeal, the defendant presents the following issues for review: (1) whether the State proved the defendant guilty of domestic battery beyond a reasonable doubt; (2) whether section 12-3.2 of the Criminal Code of 1961 (Criminal Code) is unconstitutionally vague (720 ILCS 5/12-3.2 (West 2004)); (3) whether the defendant received ineffective assistance of counsel; (4) whether the trial court erred in its recollection of the evidence when it weighed the credibility of witnesses and found the defendant guilty; (5) whether the defendant is entitled to a credit of $5 per day toward the fines assessed against him for time he spent in custody prior to sentencing; and (6) whether a $30 fee for minor traffic ordinance violations must be vacated.

We hold: (1) that the evidence was sufficient to find the defendant guilty beyond a reasonable

doubt of the offense of domestic battery; (2) that section 12-3.2(a) of the Criminal Code is not unconstitutionally vague; (3) that the defendant did not receive ineffective assistance of counsel; (4) that any error occasioned by the trial court's recollection of the evidence in this case was harmless beyond a reasonable doubt and does not undermine confidence in the verdict; (5) that People v. Jones, 223 Ill. 2d 569 (2006), makes it clear that the defendant is entitled to a $10 credit for the two days he was incarcerated prior to sentencing; and (6) that the trial court erred when it imposed a fee, pursuant to section 27.2a(w)(1)(E) of the Clerks of Courts Act (705 ILCS 105/27.2a(w)(1)(E) (West 2004)), because the defendant was charged in a misdemeanor complaint but was not charged with a minor traffic or ordinance violation.

## BACKGROUND

Defendant was arrested near the intersection of Belmont and Clark Streets in Chicago following an altercation with Niya White and charged in a misdemeanor complaint with one count of domestic battery in violation of section 12-3.2 of the Criminal Code. 720 ILCS 5/12-3.2 (West 2004). The State filed a petition for an order of protection against the defendant, pursuant to the Illinois Domestic Violence Act of 1986 (the Act) (750 ILCS 60/101 et seq.(West 2004)), and on May 25, 2005, an order of protection was entered against the defendant. Finally, the defendant waived his right to a jury trial, and a bench trial was held on June 15, 2005.

### THE STATE'S CASE

### Niya White

White testified at trial that she and the defendant had been involved in a full relationship for approximately 45 days. However, White also testified that she and the defendant continued to have

a sexual relationship after the official break up of the full relationship. According to White, the sexual relationship ended on May 2, 2005. White testified that she arranged to meet with the defendant on May 2, 2005, and saw him near the intersection of Belmont and Clark in Chicago at approximately 5:30 p.m. White was with Jermaine Edward and a man whose name was Erotica. White testified that, when she approached the defendant, he was with Natasha Salazar. White started asking the defendant questions but their conversation quickly degenerated into an argument. White testified that, "Irvine grabbed [her], choked [her] on the neck, and he shoved [her] into a glass window." White also testified that the defendant slapped her in the face with an open hand and grabbed her by the hair and threw her against a parked car. According to White, the altercation ended when an unidentified man dressed in black broke things up.

Once the altercation ended, White walked to the Open Door Shelter and called the police. When the police arrived later that evening, they took White's statement and then they arrested the defendant. White testified on direct examination that she had a swollen face and a painful scalp, but on cross-examination she testified that she decided not to go to the hospital. At the conclusion of White's testimony, the State rested and the defendant made a motion for a directed verdict. Finally, after the defendant waived argument on his motion, the trial court denied the motion.

THE DEFENDANT'S CASE

Natasha Salazar

Natasha Salazar testified that she and the defendant had been together on Belmont Street, in Chicago, for approximately an hour when White approached with two other people whom Salazar had previously seen. According to Salazar, White started talking and, at first, everything seemed

okay, but then the conversation degenerated into an argument. Salazar testified that she got mad during the first 30 seconds of the conversation, so she walked a few blocks to the Dunkin' Donuts on the corner of Belmont and Clark. Streets. Salazar testified that she was at Dunkin' Donuts for approximately five to seven minutes, that she purchased a bagel and began to consume it, and that she went back outside to get her hat from the defendant. Once she was outside, she watched as White got angry and pushed the defendant, and Irvine pushed back after he was pushed. Salazar got her hat from Irvine. According to Salazar, "she [White] tried to come up and get in my face [and] started to fighting [*sic*] with the 'boot cops' out there." Salazar explained that "boot cops" are employees of a towing company that tows cars from the Dunkin' Donuts parking lot. Salazar testified that the boot cops pushed White away from her and Irvine. Finally, Salazar testified that she walked away from the scene and did not see Irvine again until he was arrested.

## Alfred Irvine

Irvine testified that he and Salazar were standing in front of the library when White approached and told him that they needed to talk. Irvine testified that Salazar left after a minute and walked off toward the nearby Dunkin' Donuts without her hat. Defendant testified that he had Salazar's hat, and therefore, he followed Salazar and walked in the direction of Dunkin' Donuts. According to the defendant, he told White, "[L]eave me alone, I don't want to be bothered with you, we're done." Nevertheless, White followed him for three blocks as he walked toward the Dunkin' Donuts. Defendant testified that White repeatedly grabbed and pulled his shoulder while she told him that they needed to talk. The defendant explained how he tried to enter Dunkin' Donuts but that the boot cops would not let him enter the store. Defendant testified that he and White passed the

Open Door Shelter as they walked. According to the defendant, White pushed him again in front of the Open Door Shelter. The defendant testified that he pushed her back to get her off him and told her to leave him alone because he did not want to have anything to do with her. The defendant also testified that Salazar approached and asked for her hat and that White started hitting his back and shoulders when he turned to give the hat to Salazar. At that point, the defendant testified the boot cops broke up the fight.

The trial court listened to the closing arguments, reviewed the testimony of White, Salazar and the defendant and stated, "I don't believe the defendant, that he kept on walking for blocks and blocks, kept on having [the] complaining witness pushing on his shoulder and basically did nothing but defend himself. I believe complainant; therefore, there will be a finding of guilty of domestic battery."

The defendant was convicted of domestic battery and (1) was sentenced to 12 months of conditional discharge, (2) was ordered to complete domestic violence counseling; (3) was sentenced to a complete stay-away order of protection from White; and (4) was ordered to pay fees and fines of $379. The defendant filed a motion for a finding of not guilty or for a new trial.

On December 21, 2005, the defendant filed a second amended motion for a finding of not guilty or for a new trial on the basis of newly discovered evidence: the affidavit of D'Angelo Zavala, one of the boot cops that witnessed the altercation. Zavala averred in his affidavit that he had watched as White followed the defendant and tried to argue with him. According to Zavala, the defendant tried to ignore White, who shoved him from behind before the defendant turned and pushed back. The defendant argued that he was previously unable to secure the affidavit or

testimony of Zavala because of the order of protection in effect before the trial and the fact that Zavala worked in an area frequented by White.

On December 21, 2005, the trial court denied the defendant's second amended motion for a finding of not guilty or a new trial (1) because the trial court judged the credibility of witnesses and believed White; (2) because the trial court indicated it judged the interest, bias, motive and prejudices and correctly applied the law to reach the right decision; and (3) because the trial court found that the defendant was not entitled to a new trial because the alleged newly discovered evidence could have been discovered during the trial through the exercise of reasonable diligence.

ANALYSIS

Sufficiency of the Evidence

The defendant argues that he was erroneously convicted of domestic battery because the State failed to prove that he was a family member or household member of the victim as charged in the State's complaint. According to the defendant, the State failed to present evidence which proved that he and White were "family or household members" that were involved in a "dating relationship" that was "more serious and intimate than casual" and comes within the purview of the domestic battery statute. 720 ILCS 5/12-3.2 (West 2004).

The State argues that it presented evidence that proved that the defendant was guilty of domestic battery statute. 720 ILCS 5/12-3.2 (West 2004). The State also argues that the evidence presented was sufficient to prove that the defendant and White were family or household members as defined in subsection (3) of section 112A-3 of the Code of Criminal Procedure of 1963 (Code of Criminal Procedure) as amended. 725 ILCS 5/112A-3(3) (West 2004). Subsection (3) of section

112A-3 defines "family or household members" as "persons who *** have had a dating or engagement relationship." 725 ILCS 5/112A-3(3) (West 2004).

Illinois courts are guided by established rules of statutory construction. "The cardinal rule of statutory construction, and the one to which all other canons and rules must yield, is to ascertain and give effect to the true intent and meaning of the legislature." State Farm Mutual Automobile Insurance Co. v. Illinois Farmers Insurance Co., 226 Ill. 2d 395, 401 (2007), citing Progressive Universal Insurance Co. of Illinois v. Liberty Mutual Fire Insurance Co., 215 Ill. 2d 121, 134 (2005), citing Country Mutual Insurance Co. v. Teachers Insurance Co., 195 Ill. 2d 322, 330 (2001). Our supreme court has consistently held that "[t]he most reliable indicator of legislative intent is found in the language of the statute." State Farm, 226 Ill. 2d at 401, citing Midstate Siding & Window Co. v. Rogers, 204 Ill. 2d 314, 320 (2003), citing Michigan Avenue National Bank v. County of Cook, 191 Ill. 2d 493, 504 (2000). When evaluating a statute, we recognize that "[s]tatutory language is afforded its plain and ordinary meaning." State Farm, 226 Ill. 2d at 401, citing Midstate Siding & Window Co., 204 Ill. 2d at 320, citing Michigan Avenue National Bank, 191 Ill. 2d at 504. With these principles in mind, we now examine the statute that criminalizes domestic battery. 720 ILCS 5/12-3.2 (West 2004).

Section 12-3.2 of the Criminal Code provides, in pertinent part:

"A person commits domestic battery if he intentionally or knowingly

without legal justification by any means:

(1) Causes bodily harm *to any family or household member*

as defined in subsection (3) of Section 112A-3 of the Code

of Criminal Procedure of 1963, as amended; [or]

(2) Makes physical contact of an insulting or provoking

nature *with any family or household member* as defined in subsection (3) of

Section 112A-3 of the Code of Criminal Procedure of 1963, as amended."

(Emphasis added.) 720 ILCS 5/12-3.2 (West 2004).

According to section 12-3.2(a)(1) of the Criminal Code, in order to prove a defendant guilty of domestic battery, the State must prove that the defendant (1) intentionally or knowingly, (2) without legal justification, (3) causes bodily harm (4) to any family or household member. 720 ILCS 5/12-3.2(a)(1) (West 2004).

Subsection (3) of section 112A-3 of the Code of Criminal Procedure, which is referenced in section 12-3.2 of the Criminal Code, defines the term "Family or household members" and provides that " 'Family or household members' include *** *persons who have or have had a dating or engagement relationship* ***." (Emphasis added.) 725 ILCS 5/112A-3 (3) (West 2004). Subsection (3) of section 112A-3 of the Code of Criminal Procedure also provides that neither a casual acquaintanceship nor ordinary fraternization between two individuals in business or social contexts shall be deemed to constitute a dating relationship. 725 ILCS 5/112A-3 (3) (West 2004). In order to determine if the defendant's contention is correct, we review the record to determine if evidence was presented which established that White and defendant were family or household members within the purview of section 12-3.2 of the Criminal Code.

On appeal, "[t]he relevant inquiry is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the

crime beyond a reasonable doubt." People v. Ward, 215 Ill. 2d 317, 322 (2005), citing People v. Evans, 209 Ill. 2d 194, 209 (2004), and People v. Hopkins, 201 Ill. 2d 26, 40 (2002); see also People v. Tabb, 374 Ill. App. 3d 680, 691 (2007), quoting People v. Cunningham, 212 Ill. 2d 274, 280 (2004) (" 'This means that [we] must allow all reasonable inferences from the record in the favor of the prosecution' "). As we review the sufficiency of the evidence of a criminal conviction, we do not retry the defendant. People v. Ward, 215 Ill. 2d 317, 322 (2005), citing People v. Evans, 209 Ill. 2d 194, 209 (2004). The defendant was convicted following a bench trial; therefore, a judge was the trier of fact with the power to determine the credibility of witnesses and to both evaluate the evidence and resolve any inconsistencies. People v. Doll, 371 Ill. App. 3d 1131, 1136 (2007), citing People v. Ortiz, 188 Ill. App. 3d 506, 514 (1989). Accordingly, " '[w]e will not reverse a conviction unless the evidence is so unreasonable, improbable or unsatisfactory that it raises a reasonable doubt of defendant's guilt.' " People v. Jackson, 358 Ill. App. 3d 927, 941 (2005), quoting Evans, 209 Ill. 2d at 209.

The State's case, that White and the defendant were "family or household members" because they were involved in a "dating relationship," was based upon the following evidence: (1) White's testimony that she had a relationship with the defendant and that she considered them to be ex-boyfriend and ex-girlfriend; and (2) White's testimony that the relationship "lasted about a month-and-a-half"; and (3) that they had a "sexual relationship" up to and including the day of the altercation. Although the defendant argues that the State's evidence was insufficient proof of a dating relationship sufficient to qualify him as a "family or household member" as defined by subsection (3) of section 112A-3 of the Code of Criminal Procedure, we note that there was no

evidence in the record that rebutted the State's evidence that the defendant and White had a dating and sexual relationship.

There is no evidence in the record (1) that the defendant and White were not boyfriend and girlfriend; (2) that White and the defendant's relationship never existed or that they only had one date; or (3) that the defendant and White did not have a sexual relationship. Instead, the defendant argues that his relationship with White, although having lasted for six weeks during which time he and White had sexual intercourse, was neither serious enough nor intimate enough to constitute a serious courtship and bring their relationship within the purview of the definition for family or household members in subsection (3) of section 112A-3 of the Code of Criminal Procedure. 725 ILCS 5/112A-3(3) (West 2004). The defendant directs this court's attention to the cases of People v. Young, and Alison C. v. Westcott as authority for his argument that " 'a "dating relationship" is a serious courtship,' " and " 'a relationship that [is] more serious and intimate than casual.' " People v. Young, 362 Ill. App. 3d 843, 851 (2005), quoting Alison C. v. Westcott, 343 Ill. App. 3d 648, 653 (2003).

In Alison C., the State filed a petition, pursuant to the Illinois Domestic Violence Act, for a plenary order of protection, and the defendant filed a motion to dismiss the petition. Alison C., 343 Ill. App. 3d at 649. The defendant maintained in his motion that he and the complainant had only gone on one date and, therefore, (1) the parties were not involved in a "dating relationship," and (2) the complainant was not a person protected by the Act. Alison C., 343 Ill. App. 3d at 650. The Alison C. court examined the definition for "dating relationships" in section 103(6) of the Act, which provides that " '[f]amily or household members' include *** persons who have or have had a dating

or engagement relationship" but only if the relationship was "neither a casual acquaintanceship nor ordinary fraternization between 2 individuals in business or social contexts." 750 ILCS 60/103(6) (West 2002). The court found that the parties were not engaged in a "dating relationship" because (1) the parties had only gone on one date, and (2) the relationship was brief and not exclusive. Alison C., 343 Ill. App. 3d at 653. The Alison C. court held that the trial court erred when it denied the defendant's motion to dismiss the petition for a plenary order of protection under the Act because the parties' relationship was not a "dating relationship" protected by the Act. Alison C., 343 Ill. App. 3d at 653.

In Young, the State filed a misdemeanor complaint against the defendant and charged him with two counts of domestic battery and one count of criminal damage to property. Young, 362 Ill. App. 3d at 844-45. The defendant maintained in the appeal that the State failed to prove an element of the offense of domestic battery: that the complainant was a "family or household member." Young, 362 Ill. App. 3d at 844. The Young court found that the complainant and the defendant did not have a fixed residence and resided in homeless shelters and that there was no evidence that they had formed a "household." Young, 362 Ill. App. 3d at 850. The Young court also found that the complainant and the defendant had a pattern of companionship and that the companionship may have included an element of romantic interest, at least on the defendant's part. Young, 362 Ill. App. 3d at 852. Finally, the Young court found that section 112A-3(3) covers some but not all intimate relationships or friendships and that the evidence was insufficient to find that the two parties had a "serious courtship"-- an established relationship with a romantic focus. Young, 362 Ill. App. 3d at 851. Therefore, the Young court held that the parties were not "family or household members."

1-06-0005

Young, 362 Ill. App. 3d at 852.

We find the Alison C. and Young cases instructive. Alison C., 343 Ill. App. 3d at 653; Young, 362 Ill. App. 3d at 852. We are also mindful of the fact that the Alison C. court was interpreting the words "family or household members" in the Illinois Domestic Violence Act (750 ILCS 60/103(6) (West 2004)), but the interpretation is helpful because the words "family or household members" also appear in the domestic battery statue in the Criminal Code. See 720 ILCS 5/12-3.2(a)(1) (West 2004). Nevertheless, Alison C. teaches us that one date and a relationship that is brief and nonexclusive do not constitute a "dating relationship." Alison C., 343 Ill. App. 3d at 653. The Young court teaches us that the definition for "family or household members" in section 112A-3(3) does not cover intimate relationships or friendships unless the parties have an established relationship with a romantic focus. Young, 362 Ill. App. 3d at 851.

We find that "[t]he General Assembly intended the domestic violence provisions to address the particular problems of abuse in intimate relationships." People v. Young, 362 Ill. App. 3d 843, 850 (2005), citing People v. Whitfield, 147 Ill. App. 3d 675, 679 (1986); see also Alison C., 343 Ill. App. 3d at 652, citing Glater v. Fabianich, 252 Ill. App. 3d 372, 376 (1993). We also find that "it is clear that a 'serious courtship' must be, at a minimum, an established relationship with a significant romantic focus." Young, 362 Ill. App. 3d at 851. In Young, the complaining witness denied the existence of a dating relationship but claimed a social relationship. Young, 362 Ill. App. 3d at 845. In Alison C., the parties went on one date. Alison C., 343 Ill. App. 3d at 652. Here, however, there were six weeks of dating coupled with sexual intercourse up to the date of the altercation. Young, 362 Ill. App. 3d at 845; Alison C., 343 Ill. App. 3d at 652. Therefore, we find

- 12 -

that the facts in this case are distinguishable from the facts in <u>Young</u> and <u>Alison C.</u>

We find that the domestic battery statute does not require that the accused and the complaining witness be presently dating at the time of the offense, merely that they "have or have had a dating or engagement relationship." 725 ILCS 5/112A-3 (West 2004), cited in 720 ILCS 5/12-3.2(a)(1) (West 2004). We also find that the relationship between White and the defendant qualifies as a serious courtship because they dated for six weeks and continued to have sexual intercourse up to and including the date of their altercation. We further find that six weeks of dating coupled with sexual intercourse is neither a casual acquaintanceship nor ordinary fraternization between two individuals in a business or a social context. When we consider the evidence in the light most favorable to the State, we hold that the evidence established that the defendant and White's relationship was a "dating relationship" because it was neither a casual acquaintanceship nor ordinary fraternization between two individuals in a business or social context. Accordingly, we hold that the defendant and the complainant were "family members" within the purview of the domestic violence statute. 720 ILCS 5/12-3.2 (West 2004); see also <u>People v. Johnson</u>, 341 Ill. App. 3d 583, 588 (2003), quoting 725 ILCS 5/112A-3(3) (West 2002).

Vagueness

The defendant also argues that section 12-3.2 of the Criminal Code is unconstitutionally vague as applied to him. Although he recognizes that shoving White is prohibited by the Criminal Code, the defendant argues that the statute offers no guidance as to what is required for a dating relationship to fall within the purview of the domestic violence statute. The defendant also argues that the relationship between them is too short in duration.

The State argues that section 12-3.2 of the Criminal Code is not unconstitutionally vague because the statute provides a person of ordinary intelligence with fair warning that grabbing a woman by the hair, throwing her against a car and holding her up against a glass window is prohibited conduct. The State also argues that the defendant's claimed dispute with the language of the statute is a stretch because the defendant used the phrase "we're done," which implied the prior existence of a relationship on which the trial court could base its finding.

The supreme court recently held that "[i]n determining whether a statute has been shown to be unconstitutional, we begin with the presumption that all statutes are constitutional." General Motors Corp. v. State of Illinois Motor Vehicle Review Board, 224 Ill. 2d 1, 24 (2007), citing People v. Waid, 221 Ill. 2d 464, 480 (2006). "The burden of rebutting that presumption is on the party challenging the validity of the statute to demonstrate clearly a constitutional violation." General Motors, 224 Ill. 2d at 24, citing People v. Greco, 204 Ill. 2d 400, 406 (2003). "If reasonably possible, a statute must be construed so as to affirm its constitutionality and validity." General Motors, 224 Ill. 2d at 24, citing Greco, 204 Ill. 2d at 406.

"The determination of whether a statute is void for vagueness must be made in the factual context of each case." People v. Falbe, 189 Ill. 2d 635, 639 (2000), citing Lee v. Nationwide Cassel, L.P., 174 Ill. 2d 540, 549 (1996), and People v. Bales, 108 Ill. 2d 182, 189 (1985). "Where, as here, the statute does not impinge on first amendment rights, due process is satisfied if: (1) the statute's prohibitions are sufficiently definite, when measured by common understanding and practices, to give a person of ordinary intelligence fair warning as to what conduct is prohibited, and (2) the statute provides sufficiently definite standards for law enforcement officers and triers of fact that its

application does not depend merely on their private conceptions." Falbe, 189 Ill. 2d at 640, citing People v. Warren, 173 Ill. 2d 348, 356 (1996).

"A statute is not unconstitutionally vague if it is explicit enough to serve as a guide to those who must comply with it." General Motors, 224 Ill. 2d at 24, citing Ardt v. Illinois Department of Professional Regulation, 154 Ill. 2d 138, 157 (1992). "Moreover, a statute is considered unconstitutionally vague only if its terms are so ill-defined that the ultimate decision as to its meaning rests on the opinions and whims of the trier of fact rather than any objective criteria or facts." General Motors, 224 Ill. 2d at 24, citing People ex rel. Sherman v. Cryns, 203 Ill. 2d 264, 291 (2003), and People v. Burpo, 164 Ill. 2d 261, 266 (1995). In short, " The challenger must establish that no set of circumstances exists under which the Act would be valid." United States v. Salerno, 481 U.S. 739, 745, 95 L. Ed. 2d 697, 707, 107 S. Ct. 2095, 2100 (1987), quoted in Greco, 204 Ill. 2d at 407. "Moreover, that the statute might operate unconstitutionally under some conceivable set of circumstances is insufficient to render it wholly invalid, as we have not recognized an overbreadth doctrine outside the limited context of the first amendment." Greco, 204 Ill. 2d at 407, citing C.E., 161 Ill. 2d at 211, quoting Salerno, 481 U.S. at 745, 95 L. Ed. 2d at 707, 107 S. Ct. at 2100.

The supreme court held that the domestic battery statute's prohibitions are sufficiently definite to give a person of ordinary intelligence adequate warning of what conduct is prohibited. People v. Wilson, 214 Ill. 2d 394, 400 (2005). While the Wilson court found that a domestic battery is committed against a family or household member, it pointed out that both the simple battery statute and the domestic battery statute prohibit one person from making physical contact of an insulting or provoking nature with another person. Wilson, 214 Ill. 2d at 400, citing 720 ILCS 5/12-

3(a), 12-3.2(a) (West 2002). The Wilson court rejected the argument that the defendant is actually making in this case: that he was not given fair warning as to whether committing a battery against White would be a simple battery or a domestic battery. Wilson, 214 Ill. 2d at 400. The defendant was aware of the fact that he and White had a "dating relationship" because they dated for six weeks and had a sexual relationship up to the date of the altercation. Therefore, we hold that the language in the domestic violence statute and the definition for "family members" in subsection (3) of section 112A-3 of the Code of Criminal Procedure are explicit enough to serve as a guide for those who must comply with and interpret the domestic violence statute. Wilson, 214 Ill. 2d at 400.

The defendant also argues that the brief length of his relationship with White removes their relationship from the purview of the domestic violence statute. 720 ILCS 5/12-3.2(a) (West 2004). Defendant's argument lacks merit. The Wilson court held that the fact the statute has no time limit does not make the statute vague. Wilson, 214 Ill. 2d at 400-01. However, even if the defendant's relationship with White was of such short duration, and it was not, that it was removed from the purview of the domestic violence statute, the defendant still violated the battery statute: the evidence established that the defendant slapped White's face, grabbed her by the hair and pushed her into a car. 720 ILCS 5/12-3 (West 2004). Accordingly, because the defendant and White were involved in a "dating relationship," thereby making them "family members," the aforementioned acts bring the defendant within the purview of both the simple battery statute and the domestic battery statute in the Criminal Code. 720 ILCS 5/12-3, 12-3.2 (West 2004).

### Ineffective Assistance of Counsel

The defendant argues that he received ineffective assistance of counsel because White was

the only inculpatory witness, yet his counsel failed to investigate Zavala, the Dunkin' Donuts boot cop who may have had information that might have corroborated the defendant's version of events. The defendant maintains that, had his counsel investigated Zavala, there is a reasonable probability of acquittal. Therefore, defendant argues that the failure to investigate Zavala is objectively unreasonable and was not a sound trial strategy.

The State argues that the defendant did not receive ineffective assistance of counsel. The State argues that the failure to investigate Zavala rests on the defendant because he was the source of the information about Zavala. The State also argues that the defendant's testimony contradicted his position that his counsel knew or should have known about Zavala. Because defendant's counsel was not informed of the potential witness, the State argues, counsel had no duty to investigate him. The State also argues that the defendant's position that the State's only evidence against him hinged on White's testimony is disingenuous because the argument that the defendant suffered prejudice depends on a construction of all of the evidence in the defendant's favor. In order to prevail, Zavala's potential testimony would have to be accepted as credible and White's testimony would have to be rejected as incredible. According to the State, the defendant's argument must fail because, when the evidence is construed in the light most favorable to the State, the defendant cannot demonstrate that the evidence was insufficient to support the conviction and sentence.

The law of ineffective assistance of counsel is well established. "The sixth amendment to the Constitution 'recognizes the right to the assistance of counsel because it envisions counsel's playing a role that is critical to the ability of the adversarial system to produce just results.' " People v. Cunningham, 376 Ill. App. 3d 298, 301 (2007), quoting Strickland v. Washington, 466 U.S. 668,

- 17 -

685, 80 L. Ed. 2d 674, 692, 104 S. Ct. 2052, 2063 (1984). "An accused is entitled to 'reasonably effective assistance,' and the touchstone for judging claims of ineffective assistance is whether an attorney's conduct renders the trial results undependable." Cunningham, 376 Ill. App. 3d at 301, quoting Strickland, 466 U.S. at 687, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064. Strickland has been adopted by the Illinois Supreme Court. People v. Albanese, 104 Ill. 2d 504, 526 (1984).

There are strict criteria for determining whether counsel is incompetent. People v. Houston, 226 Ill. 2d 135, 143 (2007), citing People v. Thompkins, 121 Ill. 2d 401, 447 (1988). "Under the two-prong Strickland test for determining whether assistance of counsel has been ineffective, a defendant must show that (1) his counsel's performance was deficient in that it fell below an objective standard of reasonableness, and (2) the deficient performance prejudiced the defendant in that, but for counsel's deficient performance, there is a reasonable probability that the result of the proceeding would have been different." Houston, 226 Ill. 2d at 144, citing People v. Evans, 209 Ill. 2d 194, 219-20 (2004), and People v. Peeples, 205 Ill. 2d 480, 512-13 (2002).

Under the deficiency prong of the Strickland test, "a defendant must overcome a strong presumption that, under the circumstances, counsel's conduct might be considered sound trial strategy." Houston, 226 Ill. 2d at 144, citing Peeples, 205 Ill. 2d at 512. "[C]ounsel is afforded wide latitude when making tactical decisions and the law presumes that counsel will faithfully fulfill his or her role envisioned by the sixth amendment." Cunningham, 376 Ill. App. 3d at 301, citing Strickland, 466 U.S. at 688-89, 80 L. Ed. 2d at 693-94, 104 S. Ct. at 2064-65. Cunningham holds that "counsel's assistance must fall 'outside the wide range of professionally competent assistance' considering all the circumstances." Cunningham, 376 Ill. App. 3d at 301, quoting Strickland, 466

U.S. at 690, 80 L. Ed. 2d at 695, 104 S. Ct. at 2066. Cunningham also holds that "choices of trial strategy are virtually unchallengeable because such a choice 'is a matter of professional judgment to which a review of counsel's competency does not extend.' " Cunningham, 376 Ill. App. 3d at 301, quoting People v. Cundiff, 322 Ill. App. 3d 426, 435 (2001); see also Strickland, 466 U.S. at 690, 80 L. Ed. 2d at 695, 104 S. Ct. at 2066.

With regard to the prejudice prong of the Strickland test, a reasonable probability that the result would have been different is a probability that undermines confidence in the outcome. Houston, 226 Ill. 2d at 144, citing Evans, 209 Ill. 2d at 220, and Peeples, 205 Ill. 2d at 513.

In order to prevail on a claim of ineffective assistance, a defendant must satisfy both the deficiency prong and the prejudice prong of the Strickland test. Houston, 226 Ill. 2d at 144-45, citing Evans, 209 Ill. 2d at 220. However, "[i]n determining whether a defendant has received ineffective assistance of counsel, a reviewing court may review either prong first, and the court need not consider both prongs of the standard if a defendant fails to show one prong." Cunningham, 376 Ill. App. 3d at 301, citing Strickland, 466 U.S. at 697, 80 L. Ed. 2d at 699, 104 S. Ct. at 2069.

Generally, an attorney cannot be found to have made decisions based on valid trial strategy where he or she fails to conduct a reasonable investigation, fails to interview witnesses, and fails to subpoena witnesses. People v. Makiel, 358 Ill. App. 3d 102, 107 (2005), citing People v. Coleman, 267 Ill. App. 3d 895, 899 (1994). "Attorneys have an obligation to explore all readily available sources of evidence that might benefit their clients." (Emphasis added.) Makiel, 358 Ill. App. 3d at 107, citing Brown v. Sternes, 304 F.3d 677, 692 (7th Cir. 2002), citing Hall v. Washington, 106 F.3d 742, 749 (7th Cir. 1997). We also recognize that the failure to conduct an investigation and to

develop a defense (People v. Wright, 111 Ill. 2d 18 (1986); Coleman, 267 Ill. App. 3d 895) and the failure to present available witnesses to corroborate a defense (People v. Solomon, 158 Ill. App. 3d 432 (1987)) have been found to be ineffective assistance because defense counsel has a legal and ethical  professional obligation to explore and investigate a client's case.  Makiel, 358 Ill. App. 3d at 107, citing People v. Morris, 335 Ill. App. 3d 70, 79 (2002).

However, in order to evaluate the defendant's claim that he received ineffective assistance of counsel, we must begin with the general principle that a counsel's decision about whether to present a particular witness is generally a strategic choice which cannot support a claim of ineffective assistance of counsel.  People v. Richardson, 189 Ill. 2d 401, 414 (2000), citing People v. Griffin, 178 Ill. 2d 65, 86 (1997).  Despite the general rule that attorneys are required to conduct a reasonable investigation in order for their representation to be considered to be a valid trial strategy (Makiel, 358 Ill. App. 3d at 107), we do not believe that Strickland, Albanese and their progeny extend to require the defense counsel to read the defendant's mind about the existence of a potentially exculpatory witness and the potential nature of that witness' testimony.  People v. Harris, 206 Ill. 2d 293, 306 (2002) (where the defendant is the source of the evidence yet fails to inform his attorney about it before trial, he cannot subsequently blame the attorney for failing to investigate the evidence).  We note that the defendant testified at trial that the boot cops would not let him enter Dunkin' Donuts.  However, the defendant testified at the hearing on his second amended posttrial motion for a finding of not guilty or a new trial that, "[he] did not know about [Zavala] until after [White] mentioned it in this court proceedings."  The defendant also testified that, "I didn't know where [Zavala] worked."  We find that (1) the defendant's argument that he did not know about the

boot cops (Zavala) until White mentioned him during her testimony, (2) his argument that his knowledge of the boot cops was limited to the cops preventing him from entering Dunkin' Donuts to take Salazar her hat, and (3) his argument that his counsel failed to conduct a reasonable investigation is belied by the averments in the defendant's witness' (Zavala) affidavit. Zavala averred in his affidavit (1) that he personally spoke to the defendant on the day of the altercation, and (2) that he told the defendant that "he could not go inside the Dunkin' Donuts if Ms. White was going to follow him inside." In light of the fact that the defendant personally spoke with Zavala on the day of the altercation, he could have informed his attorney to conduct an investigation because a boot cop (Zavala) was a possible witness. The aforementioned facts establish that the defendant has failed to establish the deficiency prong of the Strickland test, therefore, we need not consider the prejudice prong. Cunningham, 376 Ill. App. 3d at 301, citing Strickland, 466 U.S. at 697, 80 L. Ed. 2d at 699, 104 S. Ct. at 2069. Accordingly, we reject the defendant's assertion that he received ineffective assistance of counsel. Houston, 226 Ill. 2d at 144-45, citing Evans, 209 Ill. 2d at 220 (must satisfy both prongs of the Strickland test).

Trial Court Recollection

Next, the defendant argues that the trial court judge incorrectly recalled the evidence and relied on her faulty recollection to the defendant's detriment. The trial court's faulty recollection allegedly helped form the basis for the trial court's finding that Salazar's and White's testimony differed and that the difference affected the credibility of the witnesses. According to the defendant, the trial court summed up Salazar's testimony incorrectly and indicated that the altercation between White and the defendant took place in front of or near the Dunkin' Donuts. However, the altercation

took place two stores away from the Dunkin' Donuts.  The defendant argues that this incorrect summary of Salazar's testimony and its resulting impact deprived him of a fair trial.

The State responds that the defendant and not the trial court incorrectly recalled Salazar's testimony.  Although Salazar testified during her direct examination that the incident took place a block from the Dunkin' Donuts, she testified on cross-examination that the incident took place two stores down the block from the Dunkin' Donuts.  The State also points out that the defendant testified that the incident took place two or three stores down the street from the Dunkin' Donuts when he pushed White up against the glass window.

As previously indicated, "[i]n a bench trial, the trial court, as the trier of fact, observes the witnesses and, thus, is responsible for judging their credibility, resolving any inconsistencies, determining the weight to give their testimony, and drawing reasonable inferences from all the evidence presented." Jackson, 358 Ill. App. 3d at 941, citing People v. Steidl, 142 Ill. 2d 204, 226 (1991).  As the reviewing court, " '[w]e will not reverse a conviction unless the evidence is so unreasonable, improbable or unsatisfactory that it raises a reasonable doubt of defendant's guilt.' " Jackson, 358 Ill. App. 3d at 941, quoting Evans, 209 Ill. 2d at 209.

We are not persuaded that the trial court's statement that the altercation took place in front of or a few doors from the front of the Dunkin' Donuts had any bearing on the trial court's credibility determinations or, ultimately, on the finding of defendant's guilt.  The trial court found Salazar and the defendant to be incredible witnesses for other reasons.  Salazar and the defendant were found to be incredible based upon inconsistencies in their testimony.  One such inconsistency was Salazar's testimony that she "did see [the defendant] touch [White] but this was after she jumped on him."

The defendant's testimony contains no claim that White jumped on him. Because their testimony contained such inconsistencies, the trial court, as trier of fact, found Salazar's and the defendant's testimony to be incredible and did not believe the defendant's assertion that White struck first. Accordingly, we find the trial court's statement that the altercation took place in front of the Dunkin' Donuts rather than two or three doors down to be harmless beyond a reasonable doubt. People v. Butler, 304 Ill. App. 3d 750, 756 (1999), citing People v. Dean, 175 Ill. 2d 244, 259 (1997).

Presentencing Credit

The defendant next argues that he is entitled to receive monetary credit pursuant to section 110-14 of the Code of Criminal Procedure for the two days he spent in custody prior to being sentenced. 725 ILCS 5/110-14 (West 2004). The State argues that the defendant is not entitled to the credit he seeks because the legislature did not intend for similarly situated defendants to receive a credit.

The court imposed the following three fines against this defendant: (1) a $4 criminal/traffic conviction surcharge additional penalty pursuant to section 5-9-1(c-9) of the Unified Code of Corrections (730 ILCS 5/5-9-1(c-9) (West 2004)); (2) a $200 domestic violence fee pursuant to section 5-9-1.5 of the Unified Code of Corrections (730 ILCS 5/5-9-1.5 (West 2004)); and (3) a $10 domestic battery fee pursuant to section 5-9-1.6 of the Unified Code of Corrections (730 ILCS 5/5-9-1.6 (West 2004)).

The supreme court recently examined section 110-14(a) of the Code of Criminal Procedure, the presentencing credit statute, in People v. Jones, 223 Ill. 2d 569 (2006). Section 110-14(a) of the Code of Criminal Procedure provides:

- 23 -

"Any person incarcerated on a bailable offense who does not supply bail and against whom a fine is levied on conviction of such offense shall be allowed a credit of $5 for each day so incarcerated upon application of the defendant. However, in no case shall the amount so allowed or credited exceed the amount of the fine." 725 ILCS 5/110-14(a) (West 2004).

Jones discusses the difference between fines and costs and draws the following distinction:

" 'A "fine" is a pecuniary punishment imposed as part of a sentence on a person convicted of a criminal offense. People v. Despenza, 318 Ill. App. 3d 1155, 1157 (2001). A "cost" is a charge or fee taxed by a court such as a filing fee, jury fee, courthouse fee, or reporter fee. Despenza, 318 Ill. App. 3d at 1157. Unlike a fine, which is punitive in nature, a cost does not punish a defendant in addition to the sentence he received, but instead is a collateral consequence of the defendant's conviction that is *compensatory in nature.* People v. Terneus, 239 Ill. App. 3d 669, 672 (1992). A "fee" is a charge for labor or services, especially professional services. Black's Law Dictionary 629 (7th ed. 1999).' " (Emphasis in original.) Jones, 223 Ill. 2d at 581, quoting People v. White, 333 Ill. App. 3d 777, 781 (2002).

The Jones court held that "the charge imposed by section 5-9-1(c-9) is subject to offset."

Jones, 223 Ill. 2d at 587; see also 725 ILCS 5/110-14(a) (West 2004) (a defendant is entitled to a credit of $5 for each day so incarcerated provided the amount so allowed or credited shall not exceed the amount of the fine). Accordingly, following Jones, the defendant is entitled to a credit of $10 for the two days he was incarcerated prior to sentencing. Jones, 223 Ill. 2d at 587.

Minor Traffic Ordinance Violation Fee

Finally, the defendant argues that this court should vacate the $30 minor traffic ordinance violation fee imposed by the trial court pursuant to section 27.2a(w)(1)(E) of the Clerks of Courts Act. 705 ILCS 105/27.2a(w)(1)(E) (West 2004). The State concedes that the defendant was charged by misdemeanor complaint and was not charged with a minor traffic or ordinance violation. Because the trial court erred in imposing the fee, the State does not oppose the vacatur of this fee. Accordingly, the $30 minor traffic ordinance violation fee imposed by the trial court, pursuant to section 27.2a(w)(1)(E) of the Clerks of Courts Act, is vacated. 705 ILCS 105/27.2a(w)(1)(E) (West 2004).

CONCLUSION

In light of the foregoing, the defendant's conviction and sentences are affirmed as modified.

Affirmed as modified.

CAMPBELL, J., and O'BRIEN, J., concur.