2020 IL App (1st) 171445-U

No. 1-17-1445

Order filed September 30, 2020

First Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 16 CR 1025 |
| | ) | |
| SHANNON FRYE, | ) | Honorable |
| | ) | Joseph M. Claps, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE PIERCE delivered the judgment of the court.
Justices Hyman and Coghlan concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Defendant's conviction for domestic battery is affirmed where the evidence was sufficient to establish that he and the victim had a dating relationship.

¶ 2    Following a bench trial, defendant Shannon Frye was found guilty of domestic battery and unlawful restraint. The trial court merged the unlawful restraint conviction into the domestic battery conviction and sentenced defendant to an extended term of 4 years and 10 months' imprisonment for domestic battery. On appeal, defendant argues that the State failed to establish

that the victim, Mildred Johnson, was a family or household member for purposes of the domestic battery statute. For the following reasons, we affirm.

¶ 3    Defendant was charged by information with aggravated domestic battery for strangling Johnson (720 ILCS 5/12-3.3(a-5) (West 2014)) (count I) and causing great bodily harm (720 ILCS 5/12-3.3(a) (West 2014)) (count II); domestic battery causing bodily harm (720 ILCS 5/12-3.2(a)(1) (West 2014)) (count III); and unlawful restraint (720 ILCS 5/10-3(a) (West 2014)) (count IV). Counts I, II, and III alleged that Johnson was a "family or household member" as defined in section 112A-3(3) of the Code of Criminal Procedure of 1963 (725 ILCS 5/112A-3(3) (West 2014)) in that she had a "dating relationship" with defendant, and count III further alleged that defendant had two prior convictions for domestic battery.

¶ 4    Johnson testified that on December 17, 2015, she was in a "sexual relationship" with defendant and had been for two years. During that period, Johnson saw defendant daily or every other day. On that date, defendant lived on the second floor of his grandmother's house. Around 9 a.m., defendant "snuck" Johnson out of his home because defendant's grandmother did not allow him to have "company." Johnson and defendant went to the store before parting ways. That afternoon, defendant and his friend picked Johnson up from her stepfather's home. Defendant was "angry and pissed off," and called Johnson a "dumb a*** b***." Defendant grabbed and "slugged" Johnson, causing her to fall to the ground. He then placed Johnson in the vehicle. They drove to the store again before Johnson and defendant walked to defendant's home.

¶ 5    During the walk, defendant hit Johnson, called her a "w***," and accused her of sleeping with his friend. At defendant's home, he retrieved a ladder and put it against the house.

Defendant repeatedly struck Johnson and told her to climb to his room, which Johnson did because earlier that day defendant's grandmother threatened Johnson with a hammer and told her not to return to the house. Defendant's room had padlocks outside of the door, so Johnson could not leave.

¶ 6     At some point, defendant entered the room and said, "you stupid b***, how could you do this to me. How could you f*** my friend." Defendant then "made" Johnson call the friend and ask for money. Defendant hit, choked, slapped, punched, and kicked Johnson. Specifically, defendant used his open hands and closed fists to hit her "anywhere," including her face. Defendant kicked Johnson on her side and face, and "stomp[ed]" her. Defendant choked Johnson by placing his hands around her neck for approximately one minute, causing her to gasp for air. Defendant also bit Johnson's neck, stating, "b***, I'm going to bite a plug out of you." Johnson screamed and believed she would die. Her cell phone was dead and she did not have a charger, so at some point while in defendant's room, she used defendant's tablet to ask her cousin for help. After beating Johnson for an hour or two, defendant fell asleep. Defendant would not let Johnson in bed with him, so she slept on a cardboard box on the floor.

¶ 7     The next morning, defendant woke Johnson, saying, "b***, get up. Now put your s*** on because we fittin' to walk down here to this store." After Johnson dressed, defendant took her to the roof, where they talked for awhile. Defendant then "threw [Johnson] down on the roof" and kicked her face and side, "stomping" her. Defendant returned to the house, locking the door leading to his room and leaving Johnson on the roof without a coat in the cold. As she sat crying, Johnson observed defendant through the window take items from her purse. After 10 minutes,

defendant let Johnson inside, then locked her in his room and said she would not see her children.

¶ 8  Johnson tied sheets together, attached them to the latch on the door leading to the roof, and climbed down the side of the house. She then took a bus and a train to meet her cousin, Laquni Smith, at a gas station, and Smith drove Johnson to Johnson's brother's home. On December 19, 2015, Johnson went to the hospital, where she was treated for a broken finger, fractured ribs, bruises on her neck and back, and a black eye. While Johnson was in a hospital bed, she heard defendant's voice outside her room and informed the nurse that he caused her injuries.

¶ 9  The State entered several photographs of Johnson taken at the police station on or around December 20, 2015. The photographs show a bruise on Johnson's eye, a bald spot in her hair, a splint on her finger, and markings on her neck, lip, and chest.

¶ 10  On cross-examination, Johnson confirmed that at the preliminary hearing she characterized defendant as her friend. At the time of the incident she was participating in court-ordered drug and alcohol treatment, and was being treated for bipolar disorder, for which she was prescribed medication. Johnson had been to defendant's grandmother's house multiple times prior to the date of the incident. Defense counsel entered several photographs of defendant's bedroom, which Johnson testified showed an accurate depiction of how it looked on the date of the incident. Defense counsel also entered a photograph of the back of Johnson's head, which she stated showed where defendant pulled out her hair.

¶ 11    Smith testified that on December 18, 2015, around 11 a.m., she met Johnson at a gas station. Johnson was afraid, crying, and leaning over like she could not stand up straight. Smith drove Johnson to Johnson's brother's home.

¶ 12    Johnson's brother, Willie Mays, testified that around 11 a.m. or 12 p.m. on December 18, 2015, Smith and Johnson drove to his home. Johnson's fingers were swollen. Mays took Johnson inside, gave her pain pills, and tried to get her to sleep.

¶ 13    Chicago police officer Clifton Thurman testified that he and his partner responded to a domestic battery report and met Johnson at the hospital. While Johnson explained what happened, paramedics passed by with a black male on a stretcher whom Johnson identified as the assailant. In court, Thurman identified defendant as the man on the stretcher.

¶ 14    Chicago police detective Juanita Richardson testified that on December 20, 2015, she was assigned to investigate the incident and searched defendant's residence. Prior to searching defendant's residence, defendant and his grandmother signed "consents to search." In defendant's bedroom, Richardson observed several cell phones and a small bible containing two or three bank cards in Johnson's name.

¶ 15    After the State rested, defendant moved for a directed finding. The trial court granted the motion as to the aggravated domestic battery counts, but denied the motion as to the remaining counts.

¶ 16    The trial court found defendant guilty of domestic battery and unlawful restraint and merged the unlawful restraint conviction into the domestic battery conviction. Defendant filed a "motion to reconsider, motion to vacate judgment and/or motion for a new trial," which the trial court denied. Following a hearing, the trial court sentenced defendant to an extended term of 4

years and 10 months' imprisonment for domestic battery. Defendant filed a motion to reconsider his sentence, which the trial court denied.

¶ 17    On appeal, defendant argues that the State failed to establish that Johnson was a family or household member for purposes of the domestic battery statute. Specifically, defendant contends that although the State alleged that Johnson had a "dating relationship" with defendant, Johnson only testified that she and defendant were friends in a "sexual relationship."

¶ 18    On a challenge to the sufficiency of the evidence, a reviewing court views "the evidence in the light most favorable to the State" and determines if "any rational trier of fact could have found the required elements beyond a reasonable doubt." *People v. Newton*, 2018 IL 122958, ¶ 24. The reviewing court will not retry the defendant (*id.*) or substitute its conclusions for that of the trier of fact involving the weight of the evidence or the credibility of witnesses (*People v. Brown*, 2013 IL 114196, ¶ 48). The trier of fact is responsible for assessing the credibility of the witnesses, weighing their testimony, and drawing reasonable inferences from the evidence. *Id.* Thus, we will reverse a conviction only where "the evidence is so unreasonable, improbable, or unsatisfactory" that the defendant's guilt was not proven beyond a reasonable doubt. *Newton*, 2018 IL 122958, ¶ 24.

¶ 19    A defendant commits domestic battery if he "[c]auses bodily harm to any family or household member" knowingly and without justification. 720 ILCS 5/12-3.2(a)(1) (West 2014). The statutory definition of "[f]amily or household members" includes "persons who have or have had a dating or engagement relationship," but does not include "a casual acquaintanceship nor ordinary fraternization between 2 individuals in business or social contexts." 725 ILCS 5/112A-3(3) (West 2014). A dating relationship is a "serious courtship" entailing "an established

relationship with a significant romantic focus." (Internal quotation marks omitted.) *People v. Irvine*, 379 Ill. App. 3d 116, 125 (2008).

¶ 20 After reviewing the evidence in the light most favorable to the State, we find that a rational trier of fact could have found that Johnson and defendant had a dating relationship. Johnson testified that at the time of the incident, she and defendant had a "sexual relationship" for two years. During that period, they saw each other daily or every other day, and she visited his home on multiple occasions. When defendant attacked Johnson, he accused her of sexual relations with one of his friends. Taken as a whole, the evidence that Johnson and defendant regularly saw each other and engaged in sexual activities, that Johnson went to defendant's home, and that defendant was angry at the prospect of Johnson having sexual relations with someone else supports a finding that Johnson and defendant had "an established relationship with a significant romantic focus." See *id.*

¶ 21 Still, defendant cites *People v. Howard*, 2012 IL App (3d) 100925, and *People v. Young*, 362 Ill. App. 3d 843 (2005), for the proposition that his and Johnson's relationship did not fit the statutory requirements. In *Howard*, the defendant and victim both denied dating each other and had around 15 sexual encounters during the year and a half preceding the incident at issue. *Howard*, 2012 IL App (3d) 100925, ¶ 5. The victim stated their relationship was "strictly sexual," and the defendant considered it "a series of one-night stands." (Internal quotation marks omitted.) *Id.* Additionally, the defendant and victim "had never spent an entire night together and did not spend much time in each other's company outside the presence of their group of friends." *Id.* In *Young*, the court found no evidence of "a romantic element" in the defendant's

relationship with the victim where he had only tried to kiss her once and they spent the night at the same homeless shelter. *Young*, 362 Ill. App. 3d at 852.

¶ 22    In contrast to those cases, here, Johnson testified that she and defendant shared a "sexual relationship," that they saw each other almost daily or daily for two years, and that she had been to his home on multiple occasions. Furthermore, on the date of the incident, defendant was angry with Johnson because he believed she had sexual relations with one of his friends. Thus, we find *Howard* and *Young* distinguishable and conclude the evidence in this case was sufficient to establish that Johnson and defendant had a dating relationship.

¶ 23    For the foregoing reasons, we affirm the judgment of the circuit court.

¶ 24    Affirmed.