No. 2—08—0889
Opinion filed March 8, 2011

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Du Page County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 07—CF—3086 |
| UDELL T. ROGERS, | ) ) ) | Honorable Robert J. Anderson, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE ZENOFF delivered the judgment of the court, with opinion.
Justices McLaren and Hutchinson concurred in the judgment and opinion.

**OPINION**

Following a jury trial, defendant, Udell T. Rogers, was convicted of criminal sexual assault of a family member under 18 years of age (720 ILCS 5/12—13(a)(3) (West 2008)). He was sentenced to 10 years' imprisonment. On appeal, defendant argues that the trial court committed reversible error by failing to comply with Illinois Supreme Court Rule 431(b) (eff. May 1, 2007), in that it did not ask each potential juror whether he or she understood and accepted each of the four key principles of criminal trials. We initially affirmed on August 6, 2010. *People v. Rogers*, 403 Ill. App. 3d 584 (2010). The Illinois Supreme Court issued a supervisory order on January 26, 2011, directing us to vacate our August 6, 2010, judgment and reconsider our decision in light of *People*

*v. Thompson,* 238 Ill. 2d 598 (2010). *People v. Rogers*, No. 110557 (Jan. 26, 2011). We now affirm.

BACKGROUND

On January 15, 2008, defendant was indicted on three counts of criminal sexual assault for knowingly committing acts of sexual penetration with his minor stepdaughter, S.S. Count I alleged that defendant placed his penis in the sex organ of S.S.; count II alleged that defendant placed his mouth on the sex organ of S.S.; and count III alleged that defendant placed his penis in the mouth of S.S.

Following a jury trial, defendant was convicted of count I and acquitted of counts II and III. The trial court denied defendant's motion for a new trial and sentenced him to 10 years' imprisonment followed by a term of mandatory supervised release of 3 years to life. After the denial of his motion to reconsider sentence, defendant timely appealed.

ANALYSIS

Defendant argues that he was denied his right to a fair and impartial jury as guaranteed by the sixth and fourteenth amendments to the United States Constitution and article I, section 8, of the Illinois Constitution, when the trial court failed to fully comply with the requirements of Rule 431(b). Defendant acknowledges that he did not preserve this issue for appellate review, but urges us to consider it under the plain-error doctrine. The State concedes that the trial court did not fully comply with Rule 431(b), but maintains that defendant has not overcome his forfeiture, because he has not established plain error.

The plain-error doctrine is an exception to the general rule of forfeiture, and we invoke it only when necessary to protect a defendant's right to a fair, though not a perfect, trial and to protect the

integrity of the judicial process.  See *People v. Herron*, 215 Ill. 2d 167, 177 (2005).  We may review an otherwise forfeited issue when either (1) "the evidence in a case is so closely balanced that the jury's guilty verdict may have resulted from the error and not the evidence" or (2) "the error is so serious that the defendant was denied a substantial right, and thus a fair trial."  *Herron*, 215 Ill. 2d at 178-79.  The defendant bears the burden of persuasion under both prongs.  *Herron*, 215 Ill. 2d at 187.  The threshold question in plain-error analysis is whether error occurred.  *Thompson,* 238 Ill. 2d at 613.

Defendant contends that error occurred when the trial court failed to comply with Rule 431(b).  Rule 431 governs *voir dire* and was amended in 1997 to codify the decision in *People v. Zehr*, 103 Ill. 2d 472 (1984), which held that "essential to the qualification of jurors in a criminal case is that they know that a defendant is presumed innocent, that he is not required to offer any evidence in his own behalf, that he must be proved guilty beyond a reasonable doubt, and that his failure to testify in his own behalf cannot be held against him."  *Zehr*, 103 Ill. 2d at 477.  In its original form, Rule 431(b) required a trial court to admonish and question prospective jurors on what are now known as the *Zehr* principles only when requested by a defendant.  *Thompson,* 238 Ill. 2d at 608.  Amended in 2007, Rule 431(b) now imposes an affirmative obligation on trial courts to do so.  *People v. Lampley*, 405 Ill. App. 3d 1, 9 (2010).  In its entirety, the rule provides:

> "The court shall ask each potential juror, individually or in a group, whether that juror understands and accepts the following principles: (1) that the defendant is presumed innocent of the charge(s) against him or her; (2) that before a defendant can be convicted the State must prove the defendant guilty beyond a reasonable doubt; (3) that the defendant is not required to offer any evidence on his or her own behalf; and (4) that the defendant's failure

to testify cannot be held against him or her; however, no inquiry of a prospective juror shall be made into the defendant's failure to testify when the defendant objects.

The court's method of inquiry shall provide each juror an opportunity to respond to specific questions concerning the principles set out in this section." Ill. S. Ct. R. 431(b) (eff. May 1, 2007).

Defendant argues that the trial court erred when it failed to ask 11 of the 12 empaneled jurors if they understood any of the *Zehr* principles and failed to question 10 of them about Rule 431(b)(3)—that defendant was not required to offer any evidence on his own behalf.

Review of the record reveals that, in its opening remarks to the entire venire, the trial court instructed all of the prospective jurors on each of the four *Zehr* principles. Thereafter, 12 prospective jurors were called to the jury box for *voir dire* in 2 panels of 6 each. The trial court specifically addressed the first panel with respect to Rules 431(b)(1), (b)(2), and (b)(4) by telling those potential jurors that defendant was presumed to be not guilty, that the State had to prove defendant guilty by proof beyond a reasonable doubt, that defendant did not have to testify, and that if defendant chose not to testify the jurors could not hold it against him. The court also asked each member of the first panel whether he or she had any "quarrel or disagreement" with any of those three principles. Each member responded in the negative. Thereafter, the State questioned the first panel and asked to excuse one member. The court then called "Juror A" from the venire and instructed him on all four of the *Zehr* principles. The court inquired whether Juror A had any quarrel or disagreement with any of those four principles; Juror A responded that he did not. The State accepted the first panel.

Defendant questioned the members of the first panel and excused one member. The court called "Juror B" from the venire. The court instructed Juror B on the presumption of innocence

(Rule 431(b)(1)) and Juror B indicated that he had no quarrel or disagreement with it. Upon further questioning by the court, Juror B replied that he understood that the State was required to prove defendant's guilt and that defendant did not have to prove his innocence, and he said that he had no quarrel or disagreement with those principles. Juror B also indicated that he could follow the court's instruction to not hold it against defendant if he chose not to testify. Both parties accepted the first panel.

The trial court then questioned the second panel. Each member of the second panel indicated that he or she had no quarrel or disagreement with the principles of Rules 431(b)(1) and (b)(2) and would be able to follow Rule 431(b)(4). After questioning the second panel, the State accepted it. After defendant questioned the second panel, he excused four of its members. The trial court then called four more persons from the venire to sit with the second panel. These four prospective jurors indicated that they had no quarrel with the principles of Rules 431(b)(1) and (b)(2) and that they could follow Rule 431(b)(4). Thereafter, upon agreement of the parties, the court excused one of the four new panel members. After calling, and ultimately excusing, three more members of the venire, the court called "Juror C." The court questioned Juror C as it had the majority of the prospective jurors about Rules 431(b)(1), (b)(2), and (b)(4) and whether there was any reason he could not be fair and impartial. After questioning Juror C, the State and defendant accepted the second panel.

This record establishes that the trial court failed to question all but Juror B about their understanding (as opposed to acceptance) of the *Zehr* principles and all but Jurors A and B regarding Rule 431(b)(3) (the principle that defendant need not present any evidence).[1] As the State concedes,

---

[1]The trial court expressly questioned Juror A on the Rule 431(b)(3) principle that defendant

the trial court's failure to fully comply with Rule 431(b) constituted error. See *Thompson,* 238 Ill. 2d at 612. We must now determine whether that error rises to the level of plain error.

Defendant makes no argument that the evidence was closely balanced under the first prong of the plain-error doctrine. Rather, he contends that, under the second prong, the trial court's error was so serious that it resulted in the denial of his substantial right to a fair and impartial jury and thus requires reversal. At oral argument defendant clarified his position, arguing that any failure to fully comply with Rule 431(b) constitutes structural error, which is automatically reversible.

Automatic reversal is required in a limited category of cases—where structural error occurs. *Thompson*, 238 Ill. 2d at 608. Structural error is deemed to have occurred "only if it necessarily renders a criminal trial fundamentally unfair or an unreliable means of determining guilt or innocence." *Thompson*, 238 Ill. 2d at 609. "Those cases include a complete denial of counsel, trial before a biased judge, racial discrimination in the selection of a grand jury, denial of self-representation at trial, denial of a public trial, and a defective reasonable doubt instruction." *Thompson*, 238 Ill. 2d at 609. In *Thompson*, our supreme court noted that a violation of Rule 431(b) implicates neither a fundamental right nor a constitutional protection. *Thompson*, 238 Ill. 2d at 609. The court explained, "While trial before a biased jury is structural error subject to automatic reversal, failure to comply with Rule 431(b) does not necessarily result in a biased jury. Rule 431(b) questioning is simply one way of helping to ensure a fair and impartial jury." *Thompson*, 238 Ill. 2d at 610-11. Because a trial court's failure to fully comply with Rule 431(b) does not inevitably result in a biased jury, the trial is not necessarily rendered fundamentally unfair or unreliable in determining guilt or innocence, and the

---

need not present any evidence. The court questioned Juror B regarding his acceptance and understanding of the fact that defendant did not "have to prove [his] innocence."

error does not fall into the limited category of structural errors requiring automatic reversal. *Thompson*, 238 Ill. 2d at 611. Accordingly, we reject defendant's argument here that automatic reversal is required.

Under the second prong of plain-error analysis, prejudice is presumed, regardless of how strong the evidence was, because of the importance of the right involved. *Herron*, 215 Ill. 2d at 187. However, the defendant bears the burden of demonstrating that the error was so serious that it affected the fairness of his trial and challenged the integrity of the judicial process. *Thompson*, 238 Ill. 2d at 613. Although the purpose of Rule 431(b) questioning is to help ensure an impartial jury, it is not the only means to do so, and it is therefore not indispensable to a fair trial. *Thompson*, 238 Ill. 2d at 614. Thus, "[w]e cannot presume the jury was biased simply because the trial court erred in conducting the Rule 431(b) questioning." *Thompson*, 238 Ill. 2d at 614. Therefore, in order to meet the burden of persuasion, a defendant alleging second-prong plain error for a Rule 431(b) violation must show that the violation resulted in a biased jury. *Thompson*, 238 Ill. 2d at 614-15.

Here, the trial court failed to comply with Rule 431(b) in two respects. Defendant makes no argument that the court's failure to question the majority of the jurors about their understanding, as opposed to acceptance, of the *Zehr* principles resulted in a biased jury. Defendant does argue that the court's failure to question the majority of the jurors about the principle that he was not required to present any evidence "may" have harmed him, despite the fact that he did present evidence—both he and his wife testified. He specifically asserts that, because the jurors were not questioned about the fact that he was not required to present evidence, they might have thought that he was required to present physical evidence or something other than testimony. According to defendant, this was especially true since the State presented numerous exhibits and four expert witnesses.

Defendant's argument is speculative and belied by the record. In addressing the venire, the trial court explained, "[Defendant] doesn't have to say anything, do anything, or prove anything at this trial." After explaining and reading the indictment, the trial court instructed the venire as to how the process of the trial would unfold. The court then stated:

"[Defendant], as I told you, does not have to present any evidence. He doesn't have to prove anything here. The State has to prove his guilt and they have got to do that by proof beyond a reasonable doubt.

Right now he is presumed to be not guilty. The State has to prove him guilty, if they are capable of doing so, by proof beyond a reasonable doubt. So [defendant] doesn't have to put on any evidence *of any kind*." (Emphasis added.)

The court then addressed the principle of Rule 431(b)(4), that defendant was not required to testify and that if he chose not to testify it could not be held against him. The court went on to instruct the venire on the different types of evidence:

"In any event, evidence is presented during the course of the trial in several different ways. Most commonly, it's from testimony from the witness stand. Occasionally, there are what are called stipulations where the parties agree that something is evidence. ***

And, finally, sometimes exhibits that are introduced into evidence during the course of the trial."

The jury was clearly instructed that defendant did not need to do anything; that there are different types of evidence, with testimony being the most common; and that defendant did not need to present evidence *of any kind*. On this record, despite the trial court's failure to question the prospective jurors on the principle that defendant was not required to present evidence, defendant

has not demonstrated that the jury was likely to believe that he was required to present evidence other than testimony, let alone demonstrated that the jury was biased.

As defendant bears the burden of persuasion under the plain-error doctrine, his failure to present any evidence of a biased jury prevents the second prong of the plain-error doctrine from serving as a basis for excusing defendant's forfeiture of this issue. *Thompson*, 238 Ill. 2d at 615 (where the defendant failed to present any evidence of a biased jury, he failed to meet his burden under the second prong of the plain-error doctrine, and the court would not review the error).

We also note that nothing in the record suggests that the jury was biased. The trial court instructed the jury at the close of trial and before its deliberations began that defendant was not required to prove his innocence. Such instruction may ameliorate any potential unfairness resulting from the error. See *People v. Glasper*, 234 Ill. 2d 173, 201 (2009) (holding no evidence of jury bias was shown, especially where jury was both admonished and instructed). Moreover, the jury acquitted defendant of two of the three offenses for which he was tried. Had the jury been biased, this result would have been unlikely.

For the reasons given, we affirm the judgment of the circuit court of Du Page County.

Affirmed.