2023 IL App (2d) 210357-U
No. 21-0357
Order filed May 19, 2023

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) | Appeal from the Circuit Court of Kane County. |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 10-CF-2122 |
| | ) | |
| PEDRO TERRAZAS, | ) | Honorable |
| | ) | David P. Kliment, |
| Defendant-Appellant. | ) | Judge, Presiding. |

PRESIDING JUSTICE McLAREN delivered the judgment of the court.
Justices Hutchinson and Birkett concurred in the judgment.

**ORDER**

¶ 1    *Held*:   Defendant's postconviction petition properly dismissed at second stage where issue of partner's financial motive to fabricate testimony was collateral to issue of whether defendant sexually abused partner's daughter; court's violation of Rule 431(b) was not plain error where evidence of defendant's guilt was not closely balanced; postconviction counsel was not ineffective for failure to raise Rule 431(b) issue on direct appeal. Affirmed.

¶ 2    Following a jury trial, defendant, Pedro Terrazas, was convicted of two counts of predatory criminal sexual assault of a child (720 ILCS 5/12–14.1(a)(1) (West 2010)), five counts of criminal sexual assault (720 ILCS 5/12–13(a)(2) (West 2010)), and five counts of aggravated criminal sexual abuse (720 ILCS 5/12–16(b) (West 2010)). We affirmed the trial court's judgment on direct

appeal. The trial court allowed defendant's *pro* se first stage postconviction petition but denied his second stage postconviction petition, which he filed with the assistance of appointed counsel. Defendant now appeals that decision.

¶ 3                               I.  BACKGROUND

¶ 4                                   Direct Appeal

¶ 5     We found the following facts when deciding defendant's direct appeal.

¶ 6     Defendant was charged in an 18–count indictment with various offenses committed against M.D., the daughter of defendant's girlfriend. Counts I and II alleged that defendant committed predatory criminal sexual assault between June 17, 2002, and June 17, 2007, by placing his penis in M.D.'s sex organ. The State dismissed counts III and IV before trial.

¶ 7     Counts V through XI all alleged that defendant committed criminal sexual assault between June 17, 2007, and August 22, 2010. Counts V and VI alleged that defendant put his penis in M.D.'s sex organ. Counts VII and VIII alleged that defendant put his penis in M.D.'s anus. Count IX alleged that defendant put his penis in M.D.'s mouth. Count X alleged that defendant put his mouth on M.D.'s sex organ. Count XI alleged that defendant placed his penis in M.D.'s sex organ by the use of force.

¶ 8     Counts XII through XVIII all alleged that defendant committed aggravated criminal sexual abuse between June 17, 2002, and August 22, 2010. Counts XII and XIII alleged that defendant placed his hand on M.D.'s breast for his own sexual gratification. Counts XIV, XV, and XVI alleged that defendant placed his hand on M .D.'s sex organ for his own sexual gratification. Count XVII alleged that defendant forced M.D. to touch his penis. Count XVIII alleged that defendant put his mouth on M.D.'s sex organ.

¶ 9 At trial, M.D. testified that defendant began dating her mother, Maria Orquiz, and moved in with her and her mother when M.D. was four years old. M.D. was frequently alone with defendant because her mother worked the night shift and her brother would often play outside with friends. During these times, defendant would get close to M.D. and touch her breasts outside of her clothes. Sometimes, he came into her bedroom in the middle of the night to touch her breasts, waking her up. She estimated that this happened two to three times per week.

¶ 10 When M.D. was nine, defendant began to touch her vagina, first over her clothes, then under her clothes. He told her that it was "okay." He did this two to three times per week. Defendant never stopped doing it until M.D. left home at age 16.

¶ 11 M.D. testified that, when she was 11, defendant took her into his bedroom, had her stand with her upper body on his bed, and had vaginal sex with her from behind. Defendant had sex with M.D. in his bedroom two to three times per week. Around M.D.'s twelfth birthday, the family built her a bedroom in the basement. Defendant then had sex with her in that room.

¶ 12 When M.D. was about 15, defendant started having anal sex with her. He told her that this was a "good way to do it" because she could not get pregnant. M.D. recalled a specific incident in 2010 when defendant had anal sex with her on a sleeping bag in the living room.

¶ 13 On August 18, 2010, M.D., her mother, and her brother went to a party at the home of Norma Orquiz, M.D.'s aunt. When they returned, defendant was angry about something. M.D. argued with defendant and eventually left the house and walked back to Norma's house. Maria arrived shortly thereafter, and M.D. told Maria and Norma about the abuse. Maria left the house while Norma called the police.

¶ 14 Marco Gomez was one of the officers who responded to the call. He found M.D. sitting quietly next to Norma. Norma told him that M.D. said she did not want to go back home. When

asked why, Norma said that M.D. had told her that her "stepfather" had been having sex with her since she was six years old.

¶ 15    After an initial search of her house, the officers conversed with Maria on the front porch. Defendant interrupted the conversation and said that Maria did not have to suffer anymore, because defendant did have sex with M.D. The officers sat down with defendant at the kitchen table, where he told them that, about a year before, M.D. came out of the shower and asked if he wanted to "see more." He said that he did, and they started having sex regularly. He estimated that he had sex with M.D. nearly every day for a year. He touched her breasts and vagina with his hands, and they both performed oral sex with each other.

¶ 16    The jury was given verdict forms that differentiated between offenses involving different charged conduct, but not different counts involving the same charged conduct. Thus, the jury received three identical verdict forms for "aggravated criminal sexual abuse (hand/sex organ)," "aggravated criminal sexual abuse (hand/breast)," and "predatory criminal sexual assault (penis/anus)."

¶ 17    The jury acquitted defendant of counts IX, X, XVII, and XVIII, but found him guilty of all other counts. In all, defendant was convicted of two counts of predatory criminal sexual assault, five counts of criminal sexual assault, and five counts of aggravated criminal sexual abuse.

¶ 18    Following a sentencing hearing, the court sentenced defendant to 10 years' imprisonment for each count of predatory criminal sexual assault, 5 years for each count of criminal sexual assault, and 5 years for each count of aggravated criminal sexual abuse. The court orally ordered that the terms for predatory criminal sexual assault and criminal sexual assault would be served consecutively to each other. The terms for aggravated criminal sexual abuse would be served concurrently with each other, but consecutively to the other sentences. The court issued a separate

sentencing order for each count and a separate order for each category of offense. According to the Department of Corrections website, the department has interpreted the court's order as requiring defendant to serve an aggregate of 50 years and 9 months in prison. Defendant timely appealed.

¶ 19 We ordered that the mittimus be corrected to reflect the concurrent sentences that the trial court orally imposed.

¶ 20 Postconviction Petition

¶ 21 In 2015 defendant filed a postconviction petition, challenging his trial counsel's failure to question Maria about her financial motive to fabricate the sexual abuse allegations. According to the petition, defendant told his trial attorney that Maria was in financial distress and fabricated the allegations in order to take all of defendant's assets, namely, the $50,000 he had in his bank account and his cars. The court advanced the petition to the second stage with the appointment of counsel.

¶ 22 The amended postconviction petition alleged that the evidence demonstrated a financial motivation on the part of defendant's family to fabricate the allegations of sexual abuse, but counsel did not question Maria about it. The State moved to dismiss, arguing that appellate counsel could not have raised the issue on direct appeal because the evidence was overwhelming; therefore, the error did not constitute plain error under the closely-balanced prong and trial counsel's failure to object was not prejudicial. The trial court granted the State's motion to dismiss, and defendant appealed.

¶ 23 II. ANALYSIS

¶ 24 Postconviction Petition

¶ 25 The Post–Conviction Hearing Act (725 ILCS 5/122–1 et seq. (West 2021)) "provides a mechanism by which a criminal defendant can assert that his conviction and sentence were the

result of a substantial denial of his rights under the United States Constitution, the Illinois Constitution, or both." *People v. English*, 2013 IL 112890, ¶ 21. In noncapital cases, the Act provides for three stages. *People v. Pendleton*, 223 Ill. 2d 458, 471-72 (2006). During the second stage of postconviction proceedings, as here, the petitioner bears the burden of making a substantial showing of a constitutional violation. *Id.* at 473.

¶ 26    All well-pleaded facts not positively rebutted by the trial record are taken as true. *Id*. The trial court does not engage in fact-finding or credibility determinations at the dismissal stage. *People v. Domagala*, 2013 IL 113688, ¶ 35. We review a trial court's dismissal of a postconviction petition at the second stage de *novo*. *Pendleton*, 223 Ill.2d at 473.

¶ 27    Claims of ineffective assistance of counsel are resolved under the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, a defendant must establish that: (1) "counsel's representation fell below an objective standard of reasonableness," and (2) counsel's "deficient performance prejudiced" the defendant. *Strickland*, 466 U.S. at 688. As both prongs of the standard must be established, either may be addressed first, and, if the defendant has failed to satisfy one prong, the other need not be considered. *People v. Irvine*, 379 Ill. App. 3d 116, 130 (2008).

¶ 28    "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable judgment." *Strickland*, 466 U.S. at 690. A defendant can overcome the deference given to sound trial strategy only by showing that counsel's decision was so irrational and unreasonable that no reasonably effective defense attorney, facing similar circumstances, would pursue such a strategy. *Rogers*, 2015 IL App (2d) 130412, ¶ 71. To establish prejudice, the defendant must show that but for the unprofessional error, there is a

reasonable probability that the trial's outcome would have been different. *Strickland*, 466 U.S. at 694; *Rogers*, 2015 IL App (2d) 130412, ¶ 71.

¶ 29 Defendant claims that his trial counsel was ineffective for not impeaching Maria's testimony with her "untruthfulness and her family's motive to fabricate the allegations" of sexual abuse. The decision whether to cross-examine or impeach a witness is generally a matter of trial strategy that will not support a claim of ineffective assistance. *People v. Williams*, 329 Ill. App. 3d 846, 854 (2002). However, counsel's failure to impeach a witness when "significant impeachment" is available cannot be said to be trial strategy and may support an ineffective assistance claim. *Rogers*, 2015 IL App (2d) 130412, ¶ 71.

¶ 30 According to defendant, his trial counsel's failure to impeach Maria's testimony was both "professionally unreasonable" and prejudicial. We believe it was neither. The issue of impeaching Maria's testimony to reveal financial motives to lie is collateral to the issue for which defendant was on trial: having sex with his partner's minor daughter. Evidence of Maria's financial motive for fabricating allegations of sexual abuse, even if believed, was irrelevant to the jury's task of determining beyond a reasonable doubt whether defendant did, in fact, abuse M.D. as defined in the charging instruments. By not pursuing the collateral claim regarding Maria's testimony, counsel's representation did not fall "below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688.

¶ 31 Nor was trial counsel's representation prejudicial to defendant. His appeal argument ignores the incriminating evidence. In particular, defendant does not address his recorded confession, made directly after volunteering to the investigating officers that he had had sex with M.D. In the recording, which was published to the jury along with a transcript of the recording, defendant admitted to having oral, vaginal and anal sex with M.D. when she was 14, 15, and 16;

he admitted that they had sex more than 30 times over the course of a year and almost every day when Maria was at work. A sleeping bag that was found at the house with defendant's semen on it corroborated his confession—M.D. testified that he had anal sex with her on a sleeping bag on the floor of the living room while Maria was running errands. Defendant has not retracted or challenged the confession. At trial, he admitted to making the recorded confession but said that he falsely confessed because he was "afraid they would take my children away." Given the totality of the evidence, we fail to see how counsel's failure to impeach M.D.'s mother regarding her motives prejudiced defendant.

¶ 32    Furthermore, defendant's postconviction petition does not specify which parts of Maria's testimony should have been impeached. Nor does it even address M.D.'s highly incriminating testimony, much less assert that it too was fabricated. In sum, defendant does not suggest how, in light of his confession, the DNA evidence of his semen on the sleeping bag, and the victim's testimony, there is a reasonable probability that the exposure of Maria's alleged lying would have affected the outcome of the trial. Accordingly, defendant has not established prejudice. *Rogers*, 2015 IL App (2d) 130412, ¶ 6.

¶ 33    Defendant also claims ineffective assistance on the part of his postconviction counsel for not pursuing the evidence of Maria's "financial motive to fabricate the allegations" when the State moved to dismiss the postconviction petition. Again, Maria's closure of their joint bank account and her sale of defendant's cars does not abrogate the evidence of defendant's guilt; it is enthymematic to posit that Maria's actions establish that defendant did not abuse M.D.

¶ 34    Because defendant's petition does not identify "significant impeachment" (*Rogers*, 2015 IL App (2d) 130412, ¶ 71), he has failed to make a substantial showing of a constitutional violation. *People v. Pendleton*, 223 Ill. 2d 458, 473 (2006).

¶ 35                                    *Zehr* Principles

¶ 36    Defendant claims that he was deprived of effective assistance because his appellate counsel failed to raise the issue of the trial court's inadequate *voir dire* on direct appeal. He contends that the trial court plainly erred in its questions to prospective jurors under Illinois Supreme Court Rule 431(b) (eff. July 1, 2012) because (1) the court failed to inquire whether the jurors understood the principles listed in the rule and (2) the evidence was closely balanced.

¶ 37    Defendant forfeited this issue by failing to raise it in the trial court. See *People v. Enoch*, 122 Ill. 2d 176, 186 (1988) (defendant must both object at trial and include the alleged error in a written posttrial motion). The plain-error doctrine, however, "allows a reviewing court to consider unpreserved error where either (1) a clear or obvious error occurs and the evidence is so closely balanced that such error threatens to tip the scales of justice against the defendant, regardless of the seriousness of the error, or (2) a clear or obvious error occurs and is so serious that it affects the fairness of the defendant's trial and challenges the integrity of the judicial process, regardless of the closeness of the evidence. *People v. Olla*, 2018 IL App (2d) 160118, ¶ 29 (citing *People v. Walker*, 232 Ill. 2d 113, 124 (2009)).

¶ 38    Supreme Court Rule 431(b) requires the trial court to ask each potential juror, individually or in a group, whether the juror understands and accepts that (1) "defendant is presumed innocent of the charge(s) against him," (2) "before a defendant can be convicted the State must prove the defendant guilty beyond a reasonable doubt," (3) "the defendant is not required to present any evidence on" his behalf, and (4) "if the defendant does not testify it cannot be held against him." Ill. S. Ct. R. 431(b) (eff. July 1, 2012). We refer to these principles as the "*Zehr* principles." See *People v Zehr*, 103 Ill. 2d 472 (1984).

¶ 39    Here, , the court asked:

"Does anyone have an issue or a problem with the following concept: That a person accused of a crime is presumed to be innocent of the charges against him? Raise your hand if you have a problem with that concept.

Let the record reflect that no one has raised their hand.

Does anyone have a problem with the concept that the State has the burden of proving a Defendant guilty beyond a reasonable doubt in a criminal trial? Raise your hand if you have a problem with that idea.

Let the record reflect no one has raised their hand.

And finally, does anyone have an issue or problem with the concept that the presumption of innocence remains with the Defendant throughout the entire course of the trial and is not overcome unless from the evidence you as the jury believe the State has proven the Defendant guilty beyond a reasonable doubt? Does anyone take issue with that concept?"

All right. Let the record reflect that no one has raised their hand."

¶ 40 The trial court must ensure that each prospective juror both understands and accepts each of the four principles. *People v. Belknap*, 2014 IL 117094, ¶¶ 44-46 (it is error for the trial court to ask the prospective the jurors whether they agree with the principles but fail to also ask whether they understand them); see also *People v. Olla*, 2018 IL App (2d) 160118, ¶ 29.

¶ 41 Here, the court asked the prospective jurors only about the first two principles and asked them only if they had an issue or a problem with those principles. The State concedes, and we agree, that the court violated Rule 341(b). The question remains whether it was plain error.

¶ 42 "A Rule 431(b) violation is not cognizable under the second prong of the plain-error doctrine absent evidence that the violation produced a biased jury." *People v. Olla*, 2018 IL App

(2d) 160118, ¶ 31 (quoting *People v. Daniel*, 2018 IL App (2d) 160018, ¶ 26 (citing *People v. Sebby*, 2017 IL 119445, ¶ 52)). Defendant does not contend that the error produced a biased jury, and we agree. Before trial, the court reiterated to the sworn jurors that a defendant is not required to put on a case, not required to call witnesses or testify, and may rely on the presumption of innocence. This instruction essentially embodied the *Zehr* principles omitted during *voir dire*, namely, the right not to present evidence and right not to testify, and would have counteracted any potential unfairness stemming from the failure to comply with Rule 431(b). See *People v. Chester*, 409 Ill. App. 3d 442; 449 (2011); *People v. Rogers*, 408 Ill. App. 3d 873, 879 (2011). Moreover, the jury acquitted defendant on the allegations concerning oral sex. This would have been unlikely had the jury been biased. See *Rogers*, 408 Ill. App. 3d at 879.

¶ 43    Defendant argues only that the evidence was closely balanced under the first prong of the doctrine. According to defendant, his conviction "rested on M.D.'s allegations, which were inconsistent, contradicted Pedro's testimony, and not entirely believed by the jury."

¶ 44    "In determining whether the evidence adduced at trial was closely balanced, a reviewing court must evaluate the totality of the evidence and conduct a qualitative, commonsense assessment of it within the context of the case." *People v. Sebby*, 2017 IL 119445, ¶ 53. The defendant carries the burden of showing that the evidence was prejudicial: "he must show that the quantum of evidence presented by the State against the defendant rendered the evidence 'closely balanced' " *People v. Piatkowski*, 225 Ill.2d 551, 565 (2007). In other words, an error is prejudicial in a close case "where its impact on the result was potentially dispositive." *Sebby*, 2017 IL 119445, ¶ 68. The *Sebby* court cites *People v. Herron*, 215 Ill. 2d 167, 187 (2005) (defining "prejudicial error" as error that "alone severely threatened to tip the scale of justice" against the defendant), and *People v. White*, 2011 IL 109689, ¶ 133 (comparing "plain error review under the closely-

balanced-evidence prong to an analysis for ineffective assistance of counsel analysis based on evidentiary error" because the defendant must show that the evidence was so closely balanced that "the verdict may have resulted from the error and not the evidence adduced at trial" [internal quotation marks and citation omitted]). *Id.*

¶ 45 With these principles in mind, we consider defendant's three indicators of closely balanced evidence: (1) M.D. did not mention to the investigator from the Children's Advocacy Center that defendant had performed oral sex on her or used sex toys on her, then testified at trial two years later that he had done both; (2) the jury acquitted defendant of the oral sex allegations, which undermines the reliability of M.D.'s testimony; and (3) defendant contradicted M.D.'s allegations by testifying that he did not sexually abuse her.

¶ 46 First, viewed in the context of M.D.'s entire testimony, which describes in detail the sexual abuse defendant inflicted upon her between the ages of 8 and 16, and the other incriminating evidence set out above, we do not believe that the impact of the discrepancies in her testimony identified by defendant were potentially dispositive of the result. *Sebby*, 2017 IL 119445, ¶ 68.

¶ 47 Second, the jury's acquittal of defendant on the oral sex charges may indeed show that it did not fully believe M.D., but, more importantly, it shows that the jury understood and applied the *Zehr* principle that defendant was presumed innocent of the charges against him unless proven guilty beyond a reasonable doubt. The jury's discernment in assessing the evidence does not signify that the evidence was closely balanced for purposes of a plain error finding.

¶ 48 Third, although defendant's trial testimony contradicted M.D.'s testimony, his initial voluntary confession corroborated much of her testimony. Defendant did not disown his confession at trial but merely offered the quixotic explanation that he falsely confessed because he was afraid of losing his children. The jury, therefore, had the task of assessing defendant's trial

testimony in light of his confession. Because defendant omits the relevant evidence of his confession from the equation, he fails to present a closely-balanced evidence issue.

¶ 49 We conclude that defendant has not met his burden of showing that the evidence in this case was so closely balanced as to be prejudicial.

¶ 50 Finally, defendant argues that his appellate counsel was ineffective for failing to raise the court's Rule 341(b) violation on direct appeal. According to defendant, this failure was "professionally unreasonable." We need not reach the question of counsel's professionalism with respect to the Rule 341(b) issue, however, as our finding that the trial court did not commit prejudicial error during *voir dire* disposes of defendant's ineffective assistance argument. See *People v. Irvine*, 379 Ill. App. 3d 116, 130 (2008) (if the defendant has failed to satisfy one prong of the ineffective assistance standard, the other prong need not be considered).

¶ 51       III. CONCLUSION

¶ 52 For the reasons stated, we affirm the judgment of the circuit court of Kane County.

¶ 53 Affirmed.